IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DEBRA A. HART,

    Plaintiff,

v.

DILLON COMPANIES, INC., A KANSAS CORPORATION, D/B/A CITY MARKET

    Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

    The Plaintiff, Debra A. Hart, by and through her attorney, Reid B. Kelly, of The Kelly Law Firm, L.L.C., respectfully submits the following Complaint:

## I.    PRELIMINARY ALLEGATIONS

    1.    This is an action for declaratory relief, injunctive relief and deprivation of rights secured by the Title V11 of the Civil Rights Act of 1964 ("Title VII") as amended, codified as 42 U.S.C. § 2000e-3 *et seq.;* Federal Age Discrimination in Employment Act of 1967 as amended ("ADEA"), codified as 29 U.S.C. § 621 *et seq.;* and state common law.

    2.    Jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 2000e-3 *et seq.* and the supplemental jurisdiction of this Court regarding Plaintiff's state law claims.

    3.    Plaintiff has timely filed all necessary administrative charges, has exhausted her administrative remedies and has timely brought these legal proceedings. A copy of Plaintiff's

Dismissal and Notice of Rights, issued by the U.S. Equal Employment Opportunity Commission, is attached hereto as Exhibit 1 and incorporated herein by reference.

## II.     PARTIES

4.     Plaintiff incorporates herein by reference each and every allegation set forth above as if set forth herein verbatim.

5.     Plaintiff Debra A. Hart is a citizen of the United States, who presently resides in Archuleta County in the State of Colorado.

6.     Defendant Dillon Companies, Inc. is a Kansas corporation registered to do business, and doing business as City Market, in the State of Colorado. Plaintiff was an employee of Dillon Companies, with its principal corporate place of business in Colorado located at the following address: 65 Tejon Street, Denver, Colorado 80223.

## III.    FACTUAL BACKGROUND

7.     Plaintiff incorporates herein by reference each and every allegation set forth above as if set forth herein verbatim.

8.     Plaintiff is a 57-year-old female, with a date of birth of November 7, 1954. At all times material to this action, Plaintiff was between the age of 40 and 70.

9.     Plaintiff was employed by Defendant from October 15, 1990 until August 23, 2011. In those 21 years, she held the various positions of courtesy clerk, checker, scanning coordinator, customer relations manager, head bookkeeper, and service counter. She began work for Defendant in Battlement Mesa, Colorado. In April 1994, she moved to Pagosa Springs, Colorado, transferring to the position of Customer Relations Manager, at the Downtown City

Market location (Store #438). At that time, Mr. Richard Black was the manager of Store #438. He promoted Defendant to the position of Assistant Bookkeeper.

10. In 1997, Defendant opened a second City Market in Pagosa Springs, Store #445. The then-manager at Store #438, Rusty Hector, became manager of the new store. Plaintiff requested, but was denied, a transfer to the new store. Most of the employees who were selected to transfer to the new store were younger than Plaintiff. Plaintiff remained employed at Store #438.

11. Subsequently, Ms. Michelle Garcia became manager of Store #438. In 1999, Ms. Garcia promoted the Plaintiff to the position of Head Bookkeeper. While serving as Head Bookkeeper, Plaintiff was responsible for all store bookkeeping, cash deposits and payroll. During this time and under Plaintiff's watch, Store #438 was recognized for having the least amount of cash overages and shortages in the whole chain.

12. At all times pertinent hereto, Plaintiff was a loyal, dedicated and hardworking employee. During the entire time of her employment, Plaintiff performed outstanding service for Defendant. In 2009, she was selected as 2008 Employee of the Year.

13. In or about 2006, Plaintiff was subpoenaed to testify in an action brought against Defendant by Ms. Garcia, who was then-manager of Store #438. The action was a Title VII Sexual Discrimination claim against Defendant. The alleged discrimination included: (1) failing to promote Ms. Garcia to be the manager of a larger store; (2) telling Ms. Garcia that she deserved to be harassed because of the clothes she wore; (3) failing to respond to her concerns relating to abusive subordinate employees; (4) failing to give Ms. Garcia recognition for her accomplishments, when such recognition was given to the accomplishments of male managers;

(5) charging her with sick leave while on medical leave, when male managers were not; and (6) granting leave with pay to relocating male employees, but denying it to her under similar circumstances. *Garcia v. Dillon Companies, Inc.* Civil Action No. 05-cv-02339-MSK-MEH.

14. Within a week or two subsequent to providing testimony in support of Ms. Garcia's claims, Plaintiff received a telephone call while at work from Deborah Ross, a Human Resources Manager who works in the human resources department of Defendant's Grand Junction office.

15. Ms. Ross questioned Plaintiff regarding her deposition testimony, asking what she had been asked and what she had told the attorneys regarding Ms. Garcia. When Plaintiff informed Ms. Ross that she did not think it appropriate to repeat her testimony, Ms. Ross pressed her, and seemed upset with Plaintiff, telling her "you work for City Market," not for Ms. Garcia.

16. Following Ms. Garcia's departure from Defendant's employ, Mr. Tony Redden became manager of Store #438.

17. Defendant closed Store #438 in the fall of 2010, and the employees of Store #438 were given the opportunity to transfer to Store #445. Plaintiff was not able to keep her current position as Head Bookkeeper, as it was already filled at Store #445. The Plaintiff considered any available position at Store #445 a demotion, either because of the pay or the undesirable shift schedule. She ultimately chose a position in customer service and filled in as needed as a back-up bookkeeper in the store's bookkeeping department. Plaintiff received a cut in pay by transferring to this position.

18. The accounting and payroll systems used at Store #445 were different from the systems Plaintiff had used at Store #438, so Plaintiff was unfamiliar with some procedures and

had to learn the new systems during the brief time periods she would fill-in in the bookkeeping department. Her pay rate was adjusted to a higher rate than the rate she received at the service counter when she filled-in in the bookkeeping department.

19. In or about the fall of 2010, Plaintiff was inadvertently paid at the rate of $16.55/hour for hours she worked in the bookkeeping department when she should have been paid at the rate of $15.15/hour.

20. The head bookkeeper at Store #445, Rebecca Apodaca, became aware of the error, and informed Plaintiff that she would contact Rhonda Toland in the payroll department to determine how to fix it. She later informed Plaintiff that a problem existed in the computer system with the payroll codes, and that her pay would be deducted that week to correct the overpayment.

21. Plaintiff's understanding of that conversation was that the payroll code in the computer system would be corrected. Plaintiff was not aware of any further over payments until July of 2011.

22. During the week of July 9, 2011, Plaintiff worked in the bookkeeping department, filling in while Rebecca Apodaca was on vacation. Betty Smith, the assistant bookkeeper, asked Plaintiff to help with payroll tasks, such as new-hire entries, pay adjustments and department transfers. While doing pay adjustments on the payroll for July 9, 2011, Plaintiff changed the code on her own pay card from "SC" for service counter to "BK" for bookkeeping, as she was working in bookkeeping that week. This was a standard procedure for employees who received pay adjustments for working temporarily in higher-paid positions. She used the same code that was used on Betty Smith's payroll, expecting the same pay rate as Ms. Smith, in which case her

pay rate would go from $13.85/hour to $15.15/hour for the time she worked in bookkeeping. Instead, and unbeknownst to Plaintiff, her pay incorrectly adjusted to $16.55 an hour, as had happened the previous fall. Plaintiff did not notice the difference in pay due to the rate differential when she next received her automatic payroll deposit, as the difference was only $58.24.

23. Nonetheless, Defendant initiated an investigation of the Plaintiff, calling in Mr. Steve Pollard, Loss Prevention Specialist for Defendant. Defendant did not tell Plaintiff during any part of the investigation of her that she was allowed to have a representative present. During this initial investigation, Mr. Eric Bard, Assistant Manager, was present and took notes. Mr. Pollard returned for a follow up investigation, and at that time, Mr. Hector, the store Manager, was present. Mr. Hector did not appear interested in the investigation, as the Plaintiff believed he had already decided to terminate the Plaintiff.

24. Plaintiff was called to the Defendant's office on August 16, 2011, and Mr. Hector placed her on a one-week suspension without pay. The reason given for her suspension on the "Behavior Notice" was "untruthfulness" for the "improper adjustment to her job code resulting in an over payment of $58.24 for w/e 7-9-11."

25. One week later, on August 23, 2011, Plaintiff returned to work for a meeting regarding her suspension. The Assistant Manager, Eric Bard, headed the meeting, accompanied by two witnesses. Mr. Bard told Plaintiff that she was being terminated. Plaintiff asked Mr. Bard what was the reason for her termination. Mr. Bard told her that he did not know, since he had not been involved in the meetings. However, Mr. Bard had been present for the first day of the investigation regarding Plaintiff's suspension. Mr. Bard had no paperwork to give to Plaintiff in

connection with her termination, including any documented reason for her termination. He had no accrued vacation pay, or other pay, to present to her. Plaintiff was not asked to turn in any of Defendant's property she may have had, nor was she asked to sign anything in connection with her termination.

26. Plaintiff had been witness to a number of previous terminations of other employees during her years of employment with Defendant, and she had never seen Defendant mishandle a termination of an employee as Defendant had handled hers.

27. When Plaintiff did receive her termination documentation, it stated that her date of termination was September 9, 2011 instead of August 23, 2011. Defendant never provided Plaintiff an explanation of this discrepancy in her termination date.

28. The circumstances leading up to and then her actual termination led Plaintiff to reasonably believe that her firing was pretextual.

29. Plaintiff also reasonably believed that her firing was pretextual because, prior to any knowledge about her suspension, Plaintiff had applied to work in Defendant's pharmacy department. Plaintiff was qualified for the position, as she had passed the HIPPA test required as a key part of the pharmacy position, and she would have enjoyed an increase in pay in the new position.

30. However, Plaintiff discovered that another employee was applying for the same position and wanted help on the HIPPA test. Plaintiff reasonably knew at that point that Defendant would not hire her for the opening in pharmacy, and likely planned to actually or constructively terminate her. Defendant, in fact, never did hire her for the pharmacy opening, despite Plaintiff being qualified for the position. Defendant hired a younger employee instead.

31.     One of the key decision makers in Plaintiff's suspension and subsequent termination was Ms. Ross, the Human Resource Manager who had criticized Plaintiff's participation in Ms. Garcia's Title VII lawsuit.

32.     Since the time of Plaintiff's termination, another employee of Defendant, Bob Curvey, had worked in a different department than his normal one, resulting in a different pay rate. His pay codes had been entered improperly, resulting in an overpayment to him. However, based on knowledge and belief, Defendant imposed no suspension or other disciplinary measures upon anyone involved in his overpayment, including Mr. Curvey.

33.     Plaintiff applied for unemployment benefits after her termination. The Colorado Department of Labor and Employment ("DOL") granted Plaintiff a full award of benefits. Defendant appealed that decision. On October 13, 2011, the DOL held a hearing on Defendant's appeal. Defendant presented four witnesses at the hearing in an effort to show that Plaintiff's firing was justified. Nonetheless, the hearing officer found again in Plaintiff's favor, concluding that Plaintiff was not at fault for her termination and that she had not acted volitionally in violating any policy of her employer.

34.     Once placed on suspension, Plaintiff had invoked Defendant's progressive internal grievance procedure, entitled "Dispute Resolution Guidelines" ("DRG"). The DRG stated in part: "[T]here shall be an earnest effort on the part of the company and the employee to settle such disputes promptly through the following levels." There were three levels to the DRG: Level I, Level II Mediation Conference and Level III Arbitration Conference. Plaintiff complied with all of the requirements of the DRG.

35. Level I of the DRG stated that the appropriate employee representative council member must be present at the Level I meeting. Plaintiff had no representative member, and therefore requested that her attorney be present. Defendant denied Plaintiff's request. In fact, Defendant did not allow Plaintiff the opportunity to be present at any part of the DRG. Defendant denied any relief that Plaintiff requested at Level I and appeared to make no effort to settle Plaintiff's dispute at that level.

36. At Level II, Ms. Ross was an integral part of handling Plaintiff's grievance under the DRG, and personally interviewed Plaintiff on September 27, 2011 as the Level II Mediation Conference. No "mediation" as such actually took place, as no neutral third party was present to attempt to resolve Plaintiff's dispute. As part of the Level II Mediation Conference, Plaintiff pointed out to Ms. Ross that the DOL, in the initial decision (and later affirmed), had found no wrongdoing on her part, and that she was not at fault for her termination. Nonetheless, Defendant refused to change its decision and refused to grant her any of the relief she sought, or otherwise settle her dispute.

37. As part of the resolution procedure, Defendant was to provide Plaintiff her personnel file, and which Plaintiff formally requested. Despite her request, however, Defendant failed and refused to give Plaintiff her personnel file.

38. The last stage of Defendant's progressive internal grievance procedure was arbitration. Plaintiff formally requested that Defendant arbitrate her case. However, Defendant refused. Plaintiff was therefore left with no avenue within Defendant's business to redress her wrongful termination.

39. In sum, Defendant made virtually no effort to settle Plaintiff's dispute through its DRG.

## IV. FIRST CLAIM FOR RELIEF

### (Retaliation)

40. Plaintiff incorporates herein by reference each and every allegation set forth above as if set forth herein verbatim.

41. Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3.

42. By testifying at deposition in Ms. Garcia's Title VII action against Defendant, Plaintiff engaged in a statutorily protected act of participating in a process directed against unlawful discrimination in the workplace.

43. Subsequent to giving testimony, Defendant's Human Resources Manager, Deb Ross, expressed animus toward Plaintiff for having testified and for refusing to reveal her testimony.

44. Although Plaintiff did not immediately suffer an adverse employment action, within months of transferring to Store #445, Plaintiff was terminated following a suspension for "untruthfulness," a pretext for Defendant's retaliatory firing of Plaintiff. Ms. Ross was an integral part of this decision. Ms. Ross also directly participated in Plaintiff's application of the various dispute resolution mechanisms under Defendant's DRG, all of which resulted in no offer of settlement to Plaintiff.

45.     Defendant continued its retaliation against Plaintiff by its refusal to settle Plaintiff's dispute under its DRG.

46.     Defendant retaliated against Plaintiff as soon as it had the opportunity.

47.     An exemplary employee for many years at Store #438, Plaintiff was under the protective wing of store manager Tony Redden. It was not until she was transferred to Store #445 that the door was opened for Defendant's retaliation.

**WHEREFORE**, the Plaintiff, Debra Hart, respectfully prays that this Court:

(a)     Issue a declaratory judgment that Defendant's acts and practices, complained of herein, violated Plaintiff's rights, as secured by Title V11 of the Civil Rights Act of 1964; and

(b)     Issue a permanent injunction restraining Defendant from violating the provisions of 42 U.S.C. § 2000e-3 *et seq.*; and

(c)     Order Defendant to reinstate Plaintiff to her former position with Defendant, or alternatively to award front pay and benefits and interest, award back pay and fringe benefits and interest, and to otherwise make Plaintiff whole, and

(d)     Award punitive damages;

(e)     Award Plaintiff her costs and attorney's fees in connection with this action; pre-judgment and post-judgment interest, and for other and further relief as this Court deems just and appropriate.

## V.   SECOND CLAIM FOR RELIEF

### (Age Discrimination)

48. Plaintiff incorporates herein by reference each and every allegation set forth above as if set forth herein verbatim.

49. Defendant discriminated against Plaintiff on the basis of her age during the course of her employment and in connection with her firing.

50. Plaintiff was in the protected age group.

51. Plaintiff was otherwise qualified for her positions in customer service and bookkeeping.

52. Defendant denied Plaintiff's first request to transfer to the new store, instead transferring many younger employees with less seniority.

53. Plaintiff was also denied the pharmacy position, despite being qualified, and it was offered to a younger employee.

54. Within months of transferring to the new store subsequent to the old store's closing, Defendant fired Plaintiff for pretextual reasons.

55. At all times, Defendant has been aware of the Age Discrimination in Employment Act, as amended (ADEA), and Defendant's violations of the ADEA have been willful and malicious.

**WHEREFORE**, the Plaintiff, Debra Hart, respectfully prays that this Court:

(f)   Issue a declaratory judgment that Defendant's acts and practices, complained of herein, violated Plaintiff's rights, as secured by the ADEA; and

(g)     Issue a permanent injunction restraining Defendant from violating the provisions of 29 U.S.C. § 621 *et seq.*; and

(h)     Order Defendant to reinstate Plaintiff to her former position with Defendant, or alternatively to award front pay and benefits; award back pay and fringe benefits and to otherwise make Plaintiff whole; and

(i)     Award liquidated damages;

(j)     Award Plaintiff her costs and attorney's fees in connection with this action; pre-judgment and post-judgment interest, and for other and further relief as this Court deems just and appropriate.

## VI.  THIRD CLAIM FOR RELIEF

### (Breach of Express Covenant)

56. Plaintiff incorporates herein by reference each and every allegation set forth above as if set forth herein verbatim.

57. Defendant's DRG policy contained an express covenant that: "[T]here shall be an earnest effort on the part of the company and the employee to settle such disputes promptly through the following levels."

58. This covenant formed an express contract between Defendant and Plaintiff regarding their efforts to settle the Plaintiff's dispute.

59. Defendant breached this contractual obligation by failing to apply earnest efforts to settle the Plaintiff's dispute. In fact, Defendant appeared to conduct only a perfunctory investigation of Plaintiff's dismissal, and appeared to make no effort to settle Plaintiff's dispute.

60. As a proximate result of Defendant's breach, Plaintiff suffered damages, including, but not limited to, the failure to reinstate her to her to her position and the loss of past and future wages and benefits.

**WHEREFORE**, the Plaintiff, Debra Hart, respectfully prays that this Court enter judgment for her and against the Defendant on Plaintiff's Third Claim for Relief; damages, in an amount to be determined at trial; pre-judgment and post-judgment interest; and for other and further relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all of her claims that may be heard by a jury.

DATED this 30th day of January, 2012.

Respectfully submitted,

*s/ Reid B. Kelly, Esq.*
The Kelly Law Firm, LLC
4440 N. Pagosa Blvd.
Pagosa Springs, CO 81147
Ph. (970) 731-3710
Fax (970) 731-3754
E-mail: reid@frontier.net
**Attorney for Plaintiff**

2001-12-30 22:22          9702643556 >>   9707313754                                          P 2/5

EEOC Form 161 (11/09)       **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Debby A. Hart<br>464 Easy Street<br>Pagosa Springs, CO 81147 | From: | Denver Field Office<br>303 East 17th Avenue<br>Suite 410<br>Denver, CO 80203 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 541-2011-02295 | Myrna DeQuiroga,<br>Intake Supervisor | (303) 866-1310 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_____     11-8-11
Nancy A. Sienko,                  (Date Mailed)
Director

Enclosures(s)

cc:  Milt Christenson
     Human Resources Director
     CITY MARKET
     P. O. Box 729
     Grand Junction, CO 81502


PLAINTIFF'S EXHIBIT