IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00238-MSK-CBS

DEBRA A. HART,

    Plaintiff,

v.

DILLON COMPANIES, INC., A KANSAS CORPORATION, D/B/A CITY MARKET

    Defendant.

_____

### PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE
_____

**COMES NOW** Plaintiff Debra A. Hart, by and through her undersigned counsel, and moves the Court for an order imposing sanctions against Defendant for destroying relevant electronically stored information in its custody and control, which Defendant and its counsel knew they were obligated to preserve.

### CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.1(A), undersigned counsel certifies that he has conferred with Defendant's counsel regarding this Motion, and counsel opposes this Motion.

### I.    INTRODUCTION

1.    Defendant Dillon Companies, LLC, d/b/a City Market, has engaged in a deliberate act of failing to disclose and preserve a critical piece of evidence in this case: audio recordings of

its investigation of the incident underlying Plaintiff's termination. In a calculated move to prevail in this case, City Market destroyed the audio recordings so that Plaintiff would not have access to them, and so that Defendant would not be hurt in litigation. Such conduct goes beyond corporate carelessness and rises to the level of bad faith.

## II.     FACTUAL BACKGROUND

2. On or about July 25, 2011, Steve Pollard, District Loss Prevention Manager for City Market, interviewed Ms. Hart concerning a payroll adjustment Ms. Hart had made, which led to her suspension and ultimate termination. He interviewed her a second time on or about August 6, 2011. Mr. Pollard did not tell Ms. Hart that he was tape-recording the interviews. In fact, it was only much later that Ms. Hart discovered that she had been secretly taped. She learned that Mr. Pollard had concealed a digital voice recorder in his computer bag and was secretly recording the interviews.

3. Although Plaintiff had no knowledge of the recordings, Plaintiff's undersigned counsel made a formal request for electronically stored information related to Plaintiff's pay adjustment preceding her termination and to Plaintiff's suspension and termination in Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions. On or about June 29, 2012, Defendant provided the following responses to Plaintiff's requests:

> 7. Produce any and all surveillance video tape recordings, and documents[1], including handwritten notes, related to the investigation of Plaintiff's pay adjustment preceding her termination.

---

[1] Plaintiff's definition of "document" included "and any and all electronic, mechanical or electric records of any and all kind (including, without limitation: tapes, cassettes, discs, recordings, and computer memories)."

> **RESPONSE:** *See* documents bates labeled and marked for identification as City Market (Hart) 00678 to 00680 and produced herein.
>
> . . .
>
> 9. Produce any and all documents that related to Plaintiff's suspension and termination.
>
> **RESPONSE:** Defendant objects to this request because it is vague and ambiguous, and fails to identify the documents and information sought with any reasonable specificity and particularity. Subject to the foregoing objections, and without waiving same, Defendant responds as follows: *See* documents labeled and marked for identification as City Market (Hart 00643 to 00656 and 00662 to 00677 and produced herein, as well as documents previously produced in Defendant's Initial Disclosures.

Excerpt from Defendant's Objections and Responses to Plaintiff's Requests for Production of Documents, attached hereto as Exhibit A.

  4. Defendant not only failed to produce the audio recordings of its interviews of Ms. Hart, it failed to disclose the recordings' existence in its discovery responses. But, among the documents responsive to the above requests, Defendant provided a "Case Narrative," prepared by Steve Pollard, which contained a set of questions and answers from his interview of Plaintiff (attached hereto as Exhibit B). Although no audio recording was referenced in the Case Narrative, the questions and answers were roughly formatted as a transcript, as if they had been prepared from a recording.

  5. Suspecting from the transcript format of the Case Narrative that Mr. Pollard may have recorded the interviews, the undersigned confirmed with Mr. Barron that the interviews had been taped, and then requested copies of the tapes on September 14, 2012. On October 10, 2012, Mr. Barron informed undersigned counsel by letter that Mr. Pollard had "overwritten" the recordings and had nothing else to provide regarding the interviews.

6. On Oct 26, 2012, undersigned counsel took the deposition of Mr. Pollard. In his deposition, Mr. Pollard divulged a background in military police work in addition to his four years of work in loss prevention with City Market. He confessed that he erased the recordings despite knowing not to tamper with evidence. He also admitted that he had a digital recorder that he had taken out of his computer bag, turned on and placed back in his bag before Ms. Hart arrived at the interview office. He further admitted that he recorded his interviews of Ms. Hart without her knowledge and consent. See excerpts from the Deposition of Stephan A. Pollard, attached hereto as Exhibit C, pg. 6, l. 10 – pg. 25, l. 12.

7. Despite having tape recorded the interviews, Mr. Pollard failed to have the tapes transcribed by a court reporter or even a secretary. Instead, Mr. Pollard prepared the "transcripts," or Case Narratives, himself, despite having no training in court reporting or stenography. Ex. C, pg. 60, l. 7 – 19.

8. Ms. Hart has disputed the information contained in Mr. Pollard's Case Narrative. In her deposition, she testified that some of his wording was incorrect, and he also left things out. See excerpt from Deposition of Debra Hart, attached hereto as Exhibit D, pg. 196, l. 17 – pg. 201, l. 24. In reviewing the Case Narrative, Ms. Hart noticed that the question and answer section was incomplete; she recalled parts of the interview that weren't included in the narrative, that some of the questions and answers seemed out of context of the actual interview, and some of the language was different than what she had remembered from the interview. See Affidavit of Debby Hart attached hereto as Exhibit E.

9. Mr. Pollard had to admit that his Case Narrative was inconsistent even with the notes that another witness for Defendant, Eric Bard, had made during Mr. Pollard's interview

with Ms. Hart. Ex. C, pg. 61, l. 24 – pg. 63, l. 13. Mr. Bard was the assistant store manager at the store from which Ms. Hart had been fired.

10. Exactly what was said during Mr. Pollard's interviews of Ms. Hart was critical in the Defendant's decision to first suspend her and then fire her. Mr. Rusty Hector was the store manager who was involved in the decision to suspend and fire Ms. Hart. The first reason he gave for both her suspension and her firing was that she was found not to be credible during the investigation by Mr. Pollard. Excerpt from Deposition of Rusty Hector, attached hereto as Exhibit F; pg. 90, l. 6 – pg. 91, l. 14. Furthermore, Ms. Debra Ross, the personnel manager who likely was the ultimate arbiter in the decision to terminate Ms. Hart, also made her decision based in part on Mr. Pollard's investigation. See excerpt from second Deposition of Debra Ross, attached hereto as Exhibit G; pg 22, l. 2 – 18; pg. 43, line 11.

### III.  LEGAL ARGUMENT

**A.  Summary of Argument**

11. Within the realm of spoliation of evidence, there are sins of omission and sins of commission. Defendant's deliberate erasing of an investigative interview would fall in the latter camp. Mr. Pollard, who has had many years of experience as a military police officer and loss prevention specialist, and who knew not to tamper with evidence, made a conscious and willful decision to secretly record his interviews with Ms. Hart. Then, without training in court reporting or stenography, he prepared what looked like a verbatim transcript of the interviews. His Case Narrative, though, was both inaccurate and misleading, casting Ms. Hart into a bad light.

12. Mr. Pollard's recasting of history to suit his employer's needs was deliberate. He testified at his deposition:

                                54

24   Q   No, I'm asking, since you had taken down,
25   on a digital tape recorder, how conversations

                                55

1   exactly went, you could have, albeit a painstaking
2   process -- but you could have taken down word for
3   word how the conversations went, right?
4       A   I tried to create the most accurate
5   document from my interview with the information that
6   I collected. The document that I typed, I believe,
7   took me about seven hours to create, sir.

Exhibit C.

   13.   Mr. Pollard then intentionally destroyed the recordings, making it impossible for Ms. Hart to compare the actual words spoken in the interviews to his Case Narrative.

   14.   Such covert surveillance, rewriting of history and willful destruction of evidence reeks of a cover up on Defendant's part. Mr. Pollard intentionally slanted his Case Narrative to cast Ms. Hart in a bad light that would justify her suspension and firing. Then he destroyed the best evidence that could have impeached his Case Narrative. Such conduct falls easily within the realm of bad-faith spoliation of evidence and warrants sanctions against the Defendant.

   **B.**   <u>**Authority for Imposition of Sanctions Involving Spoliation**</u>

   15.   "'Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.,* 642 F.Supp.2d 1250, 1259-60 (D.Colo.2009) (quoting *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 457 (2nd Cir.2007)).

   16.   A court has both inherent power as well as authority under Fed.R.Civ.P. 37 (b) (2)

to sanction a litigant for the destruction of evidence. *E.E.O.C. v. Dillon Companies, Inc.*, 839 F.Supp.2d 1141, 1144 (D. Colo. 2011). *See also: Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408 (10th Cir.1997). The determination of a spoliation motion involves a three-step process. *Asher Associates, LLC v. Baker Hughes Oilfield Operations, Inc.*, 2009 WL 1328483 at *5 (D. Colo. May 12, 2009).

17. *E.E.O.C. v. Dillon, supra,* is on all fours with the instant case. Not only does that case involve a recent decision from this District regarding spoliation, but it involves sanctioning the same Defendant—and this Court issued its decision there <u>before</u> the destruction of evidence in the instant case.

18. In *E.E.O.C.*, Dillon Companies suspended and then fired a developmentally disabled employee based on an alleged violation of company policy. The employee had allegedly approached his supervisor in "the booth" where the store safe was located. (Ms. Hart had also worked in the same type of booth.) Dillon contended that the employee forced his way in, pushed his supervisor and hung up the phone she was using and/or repeatedly grabbed the phone out of her hand to hang it up. The employee disputed Dillon's version of the events.

19. The booth area was under constant video surveillance, and the surveillance tape would have shown exactly what had occurred. Dillon made three copies of the tape recording of the incident. The security guard made a master copy by popping out the erasure prevention tabs. However, someone had later placed adhesive tape over the tabs, enabling the tape to be copied over. Dillon failed to produce any of the tapes, and claimed that they were lost. *Id.*, at 1143. The plaintiff moved for sanctions for spoliation of evidence, based on the loss or destruction of the

tapes—just as here.

### C. Test for Sanctions

20. Judge Jackson set forth the test for imposing sanctions in *E.E.O.C.*:

> The Court must first determine whether the evidence "would be relevant to an issue at trial." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 621 (D.Colo.2007). If so, sanctions are appropriate when (1) a party had a duty to preserve the evidence because it knew, or should have known, that litigation was imminent, and (2) the other party was prejudiced by the destruction of the evidence. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3D 1136, 1149 (10th Cir. 2009). As a general rule, the "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

*Id.*, at 1144.

#### a) The Recordings are Relevant to the Dispute

21. Here, no serious debate can occur as to whether the destroyed evidence is relevant to the dispute. After discovering that Ms. Hart had received an incorrect pay adjustment, Defendant tasked Mr. Pollard with investigating Ms. Hart's having made an adjustment to her payroll code that led to an overpayment. Defendant relied upon Mr. Pollard's investigation of Ms. Hart in making its decision to suspend and then terminate her.

#### b) Defendant had an Obligation to Preserve the Recordings and is Culpable in their Destruction

22. Pursuant to Federal Regulations, Defendant had a legal duty to maintain all records related to Ms. Hart's termination for a period of one year. 29 C.F.R. § 1602.14. Further, once Ms. Hart filed a charge of discrimination with the Equal Employment Opportunity

Commission in October of 2011, Defendant had a duty to retain all records relevant to the charge, including Mr. Pollard's tapes, until the dispute is resolved. *Grabenstein v. Arrow Electronics*, Civil Action No. 10-cv-02348-MSK-KLM, pg. 9 (D.Colo. 4-23-2012). Defendant failed to do so.

23.     At his deposition on Oct. 26, 2012, Mr. Pollard testified that he had likely erased the tapes eight to ten months prior to his deposition. Ex C, pg. 17, l. 25 – pg. 18, l. 9. Eight to ten months prior to Mr. Pollard's deposition would place the date of the erasure at sometime between the latter part January and the latter part of March of 2012, less than a year as required by 29 C.F.R. § 1602.14, and months after Ms. Hart had filed her discrimination charge with the EEOC.

24.     Furthermore, there is no evidence that counsel for Defendant issued a preservation hold on all evidence related to Ms. Hart's employment and termination, and certainly not to Mr. Pollard.

```
                                   105
 8   Q   Please tell me exactly what you did to
 9   ensure that you provided everything.
10      A   I kept the case in a folder, much like
11   yours. As I collected information, I put it in
12   there. And then we met, and I shared all that
13   information with my representation, and he shared it
14   with you, sir.
15      Q   Okay. When you say "we met," do you mean
16   Mr. Barron and Ms. Ross?
17      A   The three of us, yes.
```
Exhibit C.

25.     Nonetheless, Defendant had a duty to ensure that Mr. Pollard's tape recordings were not destroyed:

> A party must ensure that relevant information is retained on a continuing basis once the preservation obligation arises. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. AT 431. *Cf. Danis v. USN Communications, Inc.*, 2000 WL 1694325, *32 (N.D. Ill. 2000) (warning that the duty to preserve documents in the face of pending litigation is not a passive obligation, but rather one that must be discharged actively).

*Cache La Poudre Feeds, LLC, supra,* at 629.

26.     Furthermore, in addition to Defendant's counsel's failure to issue a litigation hold to Mr. Pollard, Defendant demonstrated a callous indifference toward its duty to preserve evidence by its failure to reprimand Mr. Pollard for his destruction of evidence:

```
                         30
1     Q   Have you received any reprimand from City
2     Market for the destruction of evidence in this?
3     A   No, sir.
```

Ex. C.

### c) Plaintiff is Prejudiced by Destruction of the Tapes

27.     The Defendant benefits greatly from the absence of the audio recordings. It is anticipated that Defendant will parade up at trial Mr. Pollard, Mr. Hector and Mr. Bard to testify regarding the complete, professional and unbiased manner in which Mr. Pollard conducted his interviews of Ms. Hart. Then Defendant will hold up Mr. Pollard's Case Narrative, with its veneer of accuracy on par with the deposition transcripts attached to this Motion. Mr. Pollard likely would testify how carefully he had prepared his Case Narrative. The jury will be able to read, allegedly word for word, what transpired in the interviews through this Case Narrative. Defendant will then argue that naturally it was justified in terminating Ms. Hart, based on how the interviews went according to the Case Narrative.

28.     The most effective way for Ms. Hart to counter such evidence would be to use the

actual tape recordings, to show not only that Mr. Pollard's Case Narrative was inaccurate, but that it was slanted to cast her in a bad light and Mr. Pollard in a good light, giving justification to the Defendant to fire her. The differences between the Case Narrative and the actual tapes would also help to prove the illegal animus that Defendant held against Ms. Hart. Thus the prejudice to Ms. Hart in destroying the tapes is manifest.

29.     This Court in *E.E.O.C., supra,* used exactly this reasoning to find prejudice to the plaintiff in that case:

> The incident in the booth was apparently the sole explanation for Mr. Stringer's termination. The defense is greatly benefited from the absence of a videotape, particularly where it intends to introduce the contents of the video through testimony of its employees who watched the video. There can be no doubt that the flipside of that equation is that plaintiff is necessarily prejudiced by its inability to examine the tape to support Mr. Stringer's version of the events or to counter the testimony of defendant's witnesses. Even assuming the video shows Mr. Stringer technically violating the company violence policy, the exact manner in which he did so is important in light of plaintiff's argument that in the past specific types of contact or violence have not resulted in employee termination. If this is true, it would lend further support to the claim that plaintiff's discharge was motivated by discriminatory animus.

*Id.*, at 1145.

### d)     **Defendant Acted in Bad Faith in Destroying the Tapes**

30.     Defendant has evidenced bad faith in its destruction of the tapes. A showing of bad faith does not require a proof of evil intent:

> A failure to preserve evidence may be negligent, grossly negligent, or willful, but the intentional destruction of relevant records-either paper or electronic-is clearly willful conduct. *Philips Electronics N. America Corp. v. BC Technical,* ___ F.Supp.2d ___, No. 2:08-cv-639 CW-SA, 2011 WL 677462, at *48 (D. Utah Feb. 16, 2011) (citing *Pension Comm.,* 685 F.Supp.2d at 463. After the duty to preserve attaches, the failure to collect either paper or electronic

11

>>records from key players, the destruction of email, or the destruction of backup tapes is grossly negligent or willful behavior. *Id.* (citing *Pension Comm.*, 685 F.Supp.2d at 455). Moreover, "[b]ad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control.'" *Id.* (quoting *Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.,* 621 F.Supp.2d 1173, 1193 (D. Utah 2009)).

*McCargo, v. Texas Roadhouse, Inc.,* Civil Action No. 09-cv-02889-WYD-KMT, pg. 15, (D. Colo. 2011).

31. Defendant acted willfully here. Mr. Pollard could have preserved his recordings; instead he deliberately taped over them.

17

```
4    Q   Okay.  Can you tell me what happened to
5   them.
6    A   Like I described, it was a digital
7   recorder.  I erased them.  As the recorder filled
8   with information, I took off the oldest one.  And
9   that happened to be involving this case.
```

Exhibit C.

32. For this deliberate destruction of evidence, the Defendant did not even reprimand him. Then, when Ms. Hart served discovery requests that directly addressed the production of the tape recordings, Defendant did not even acknowledge that the tapes had existed at some point.

33. The ultimate sign of Defendant's bad faith though was its destruction of the tapes only shortly after this Court had previously sanctioned it for destruction of tapes in the *E.E.O.C.* case. This Court's observation in *McCargo, supra,* at pg. 16 aptly applies in the instant case: "Defendant's continued obstreperous conduct goes well beyond corporate arrogance and instead

appears to be a calculated position that if it does not have the evidence to produce, and thus fails to allow Plaintiff access to the evidence, it cannot be hurt in litigation."

**34.** Under these circumstances, the imposition of sanctions should be a foregone conclusion.

### D. Types of Sanctions Imposed

35. Courts have imposed a variety of sanctions for spoliation, which may include attorneys' fees and costs, the exclusion of withheld evidence, jury instructions concerning adverse inference, and restraining orders or other forms of equitable relief.

36. Courts have generally not imposed a requirement of bad faith, outside of an adverse instruction, when considering sanctions for the spoliation of evidence. *McCargo, supra*, at pg. 18. *See, e.g., Allstate Ins. Co. v. Sunbeam Corp.,* 53 F.3d 804, 806-07 (7th Cir. 1995) (upholding dismissal of claims as sanction for spoliation, even in absence of bad faith on part of despoiler); *Dillon v. Nissan Motor Co., Ltd.* 986 F.2d 263, 267-69 (8th Cir. 1993) (upholding exclusion of evidence as sanction for spoliation, even in absence of bad faith on part of despoiler); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.* 982 F.2d 363, 368-69 (9th Cir. 1992) (same).

37. Adverse inference instructions, which instruct a jury that they may view the missing evidence as unfavorable to the spoliating party, have been imposed as sanctions in response to bad-faith spoliation. *E.E.O.C., supra*, at 1145 (instruction that the jury should assume that the production of the document would have been unfavorable to the defendant, the party responsible for its destruction.) There, this Court also ordered that Dillon not be permitted to present testimony regarding what the videotape showed, other than the former employee's

immediate supervisor. *Id.*

38.     Likewise in *McCargo, supra,* this Court imposed a combination of sanctions including exclusion of evidence, an adverse inference instruction and a monetary award. "The court also finds that, pursuant to Fed.R.Civ.P. 37(b)(2)(C), an appropriate sanction for Defendant's [bad] faith spoliation of the evidence should include imposition of attorney fees and costs for all of the proceedings related to the spoliation motion, including the briefing and the hearing." *Id.*

39.     Courts have been willing to impose substantial monetary sanctions as a direct response to spoliation. In *United States v. Philip Morris USA, Inc.*, 327 F.Supp.2d 21, 26 (D.D.C. July 21, 2004), defendant, disregarding a preservation order, implemented a policy of deleting e-mails after a period of 60 days and received monetary sanctions of $2.75 million.

## IV.     RELIEF SOUGHT

40.     Under the totality of the circumstances set forth in this Motion, this Court should not hesitate to sanction the Defendant for its conduct. "Sanctions for the destruction of evidence serve the three distinct remedial purposes of punishment, accuracy, and compensation." *McCargo, supra,* at pg. 17.

41.     Sanctions in the instant case should include the following, at a minimum:

   a)     Prohibiting Defendant from presenting evidence or eliciting testimony concerning Mr. Pollard's investigation;

   b)     Prohibiting Defendant from relying on the investigation as a justification for its decision to terminate Ms. Hart;

   c)     An adverse inference instruction to the jury that production of the tape

     recordings would have been harmful to Defendant;

  d)  An award of attorney's fees and costs Ms. Hart has incurred, related both to the deposition of Mr. Pollard and related to this Motion.

42. These sanctions are also necessary to ensure that Defendant is not allowed to benefit from its wrongful conduct and to deter this conduct in the future.

43. In determining appropriate sanctions, this Court should also consider that it has effectively punished the Plaintiff's side for misconduct. Plaintiff secretly audio taped a telephonic meeting with Ms. Debra Ross during Defendant's Dispute Resolution Process. And, this Court penalized her by granting Defendant's Motion to Amend its Answer to add a defense of after-acquired evidence based on alleged misconduct uncovered during discovery. [Doc. # 32.] In contrast to Defendant's conduct here, however, Plaintiff did not destroy that recording. To the contrary, as soon as undersigned counsel became aware of its existence, he disclosed it to the Defendant and turned over the recording in its entirety.

44. This Court also found Ms. Michelle Garcia, a witness for Ms. Hart, in contempt regarding her conduct at her deposition, and imposed a fine of $100.00 on her. [Doc. # 50.]

45. Plaintiff moves this Court to use an equally heavy hand in meting out sanctions to Defendant for its destruction of evidence.

WHEREFORE, Ms. Hart respectfully moves this Court to impose sanctions upon the Defendant for destruction of evidence, as more fully set forth above, and for such other and further relief as this Court deems appropriate in exercising its inherent powers.

Respectfully submitted this 31st day of January, 2013.

<u>*s/ Reid B. Kelly, Esq.*</u>
The Kelly Law Firm, LLC
4440 N. Pagosa Blvd.
Pagosa Springs, CO 81147
Ph. (970) 731-3710
Fax (970) 731-3754
E-mail: reid@frontier.net
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 31, 2013, I electronically filed a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David L. Barron
COZEN O'CONNOR
One Houston Center
1221 McKinney Street, Suite 2900
Houston, TX 77010
Phone: (832) 214-3900
Fax: (832) 214-3905
dlbarron@cozen.com
*Counsel for Defendants Dillon Companies, Inc. d/b/a City Market*

                          *s/ Lisa. Kelly*
                          Legal Assistant to Reid B. Kelly
                          The Kelly Law Firm, LLC
                          4440 N. Pagosa Blvd.
                          Pagosa Springs, CO 81147
                          Ph. (970) 731-3710
                          Fax (970) 731-3754
                          E-mail: reid@frontier.net
                          *Attorney for Plaintiff*