IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00238-MSK-CBS

DEBRA A. HART

Plaintiff,

v.

DILLON COMPANIES, INC.,
A KANSAS CORPORATION,
D/B/A CITY MARKET,

Defendant.

_____

**DEFENDANT DILLON COMPANIES, INC. d/b/a CITY MARKET'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**
_____

Defendant Dillon Companies, Inc. d/b/a City Market ("City Market") submits this Response to Plaintiff's Motion For Sanctions for Spoliation of Evidence, and would respectfully show the Court as follows:

## I.
## INTRODUCTION

The timing of Plaintiff's Motion speaks volumes as to its purpose. This Motion is intended to be a distraction from City Market's Motion for Summary Judgment, and need not even be ruled upon until City Market's Motion is decided. The issues raised by Plaintiff amount to nothing more than premature objections to the admissibility of a trial exhibit, and are best left until trial for a ruling.

Even if the Court is inclined to address the Motion on the merits, it should be denied. The "evidence" that Plaintiff claims was lost is a recording of two interviews where she was present and has personal knowledge of what transpired. Steve Pollard, the loss prevention

officer who made the recording, used it to prepare a report of the conversations, the substance of which was corroborated by Plaintiff in her deposition, and by both the recollections and contemporaneous notes of other witnesses who were present. Notably, although Plaintiff claims in her Motion that the report is "slanted" and "misleading", her own self-serving affidavit on the alleged "differences" does not dispute 90 percent of the report, nor identify a fact dispute which is relevant to the case.

Simply, the deletion of the digital recording of the interviews does not prejudice Plaintiff because she can capably testify as to what she said to Pollard, and there are other notes/documents memorializing the substance of the interviews. Indeed, City Market is equally disadvantaged by the loss of the tape, which would admittedly contain helpful admissions for City Market's case. ***The crux of Plaintiff's argument is that she is harmed by City Market's reliance upon Pollard's report of the interviews, without production of the actual tape recording from which it was derived.*** This is more properly an evidence issue for trial, and the parties and Court should not waste time litigating the hypothetical question of whether Plaintiff is prejudiced by a document which may never actually be shown to a jury.

Plaintiff's Motion also fails because there is no bad faith in this case. Pollard testified that he did not know he needed to save the recording in addition to his report, and the deletion was inadvertent (done only after the recorder was full). Contrary to Plaintiff's claims, City Market did send out a hold letter to all witnesses, including Pollard, advising them to retain all evidence. The deletion of the file occurred *before* Pollard received the hold notice. City Market has been forthcoming in discovery regarding the deletion of the digital recording, and has hid nothing. City Market has even gone so far as to allow Plaintiff's counsel to inspect the digital recorder in Pollard's deposition. City Market offered Plaintiff an opportunity to have her own

2

expert review the recorder, but her counsel did not want to incur the cost. Instead, City Market retained a forensic expert, at its own expense, in an unsuccessful attempt to recover the deleted files.

Discovery sanctions are not to be awarded lightly, and should be reserved for real abuse. This is not even a close call. City Market should not be sanctioned, and the Court should reserve for trial the question of whether the loss of the tape impacts the admissibility or weight to be given to Pollard's report.

## II.
## FACTUAL BACKGROUND

Plaintiff's Motion revolves around a digital tape-recording made by Steven Pollard, who worked in the Loss Prevention Department at City Market. Pollard conducted the investigation into Plaintiff's manipulation of her job code to award herself a higher pay rate.

In his deposition, Pollard testified that he used a digital recorder to make a tape-recording of his interviews, so that he could later use the recording as a tool to draft a narrative report. (Pollard Deposition, p. 16/6-10, attached as Exhibit 1). In this case, Pollard conducted two interviews of Debra Hart, and created two digital recordings. (Ex. 1, p. 16/11-13). The digital recorder could only hold so much information before it became full. As the recorder filled with new files, Pollard's practice was to delete the oldest one. At some unknown point in time, Pollard deleted the files related to the interviews of Plaintiff. (Ex. 1, p. 17/4-9).

No one at City Market instructed Pollard to secretly tape-record his loss prevention interviews. It was Pollard's own idea. (Ex. 1, p. 29/12-17). Pollard's purpose in recording the interviews was to use the information for the reports that he later created. (Ex. 1, p. 29/16-18). Pollard testified that he spent approximately seven hours listening to the recording and typing up

3

his report of the interviews. (Ex. 1, p. 55/4-7). He tried to make the report as "accurate as possible." (Ex. 1, p. 55/ 8-23).

Steve Pollard also took notes during the two interviews with Plaintiff. (Ex. 1, p. 47/10-18). Those notes have all been produced in discovery. (Exhibit 4). Similarly, Assistant Manager Eric Bard attended the first interview between Pollard and Plaintiff on July 25, 2011. Bard's notes have been produced during discovery. (Exhibit 5).

On or about March 1, 2012, within two weeks of notice of the instant lawsuit, City Market's legal department issued a litigation hold letter to all witnesses including Pollard (Pollard Affidavit, ¶ 4, attached as Exhibit 3). At this point, Pollard had already deleted the recording on his digital recorder. (Ex. 1, p. 18/ 5-19). The fact that Pollard deleted the recordings was never hidden from Plaintiff. In response to discovery requests from Plaintiff, City Market's counsel freely admitted to Plaintiff's counsel that Pollard had "overwritten" the digital recordings (Barron Affidavit, attached as Exhibit 2, ¶ 4) and Plaintiff was able to fully depose Pollard on the issue. Further, Plaintiff's counsel was able to inspect the digital recorder at Pollard's deposition. (Ex. 2, ¶ 5).

Thereafter, throughout October and November 2012, the undersigned and Plaintiff's counsel had several discussions regarding hiring a forensic expert to review the digital recorder in an attempt to recover the deleted files. (Ex. 2, ¶ 6). Plaintiff's counsel indicated that he did not want to incur this expense, so the undersigned forwarded the recorder to Richard Pachella, Cozen O'Connor's Director of e-Discovery and Practice Advisory Services. (*Id*.). Pachella conducted a forensic examination of the recording device and was unable to recover the deleted digital files. (*Id*.)

## III.
## ARGUMENT AND AUTHORITIES

**A.      Standard For Spoliation Sanctions**

Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir.2007). "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party." *Kokins v. Teleflex, Inc.*, No. 06-cv-01018-wdmpac, 2007 WL 4322322, at *2 (D. Colo. Dec. 6, 2007).

If the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. *Turner v. Public Service Co. Of Colo.*, 563 F.3d 1136, 1149-50 (10th Cir. 2009). In the Tenth Circuit, "an adverse presumption that follows the destruction or spoliation of evidence arises only in cases of willful destruction [or] suppression." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 864 (10th Cir.2005) (citation and internal quotation marks omitted) (alteration in original); *Johnson v. USA Truck, Inc.*, No. 06-cv-00227-EWN-MEH, 2007 U.S. Dist. LEXIS 63007, at *16 (D. Colo. Aug. 27, 2007). <u>"[M]ere negligence in losing or destroying records" is not sufficient to warrant an adverse inference, "because it does not support an inference of consciousness of a weak case."</u> *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.1997)(emphasis added). Even if the request is for a lesser sanction, such as striking part of a party's proof, the Tenth Circuit still requires that the party who destroyed the evidence "knew, or should have known, that litigation was imminent." *Henning v. Union Pac.*

5

*R. Co.*, 530 F.3d 1206, 1220 & n. 6 (10th Cir.2008); *Energy West Mining Co v. Oliver*, 555 F.3d 1211, 1220 (10th Cir.2009).

**B.     Plaintiff Has Suffered No Prejudice As A Result Of The Unintentional Destruction Of The Digital Recording.**

With regard to prejudice, "[t]he burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to [her] cause." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996). There must be evidence that the aggrieved party was actually, not merely theoretically, prejudiced. *Burlington Northern & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1032-33 (10th Cir. 2007); *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009). "Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present "evidence essential to its underlying claim." *Krumwiede v. Brighton Assocs., L.L.C.*, No. 05-C-3003, 2006 WL 1308629, at *10 (N.D. Ill. May 8, 2006).

Here, Plaintiff was the subject of the interviews recorded by Pollard, and was an active participant for the entirety of the meetings. Thus, she is fully capable of explaining any alleged inaccuracies or omissions in Pollard's transcriptions of those meetings. Despite Plaintiff's disingenuous representations in her affidavit attached to the Motion for Sanctions (Exhibit E), her sworn deposition testimony revealed that she does not dispute the material parts of Pollard's transcript. In her deposition, the only discrepancies noted by Plaintiff were:

- Pollard's transcription did not include the introductory statements identifying the participants and the purpose of the investigation. (Plaintiff's Deposition, pp. 198/18-199/1, attached as Exhibit 6).
- Pollard allegedly interchanged the phrase "relief pay" with "backup bookkeeper." (Ex. 6, pp. 197/21-198/8, pp. 199/25-200/15).
- Pollard transposed the code "SC09B" with "SC13B" (Ex. 6, p. 200/2-7)
- Pollard allegedly said that he was "not a payroll expert." (Ex. 6, p. 201/19-22)

6

Other than those inconsequential differences, Plaintiff admitted that the overwhelming majority of the transcript summary was accurate. (Ex. 6, pp. 208/6-216/19, pp. 225/21-232/11).[1]

To establish prejudice, Plaintiff must do more than simply allege that Pollard's report is not a 100 percent accurate transcript. She must, at a minimum, show an honest to goodness factual dispute, where the loss of the tape would be prejudicial. In her Motion, Plaintiff does not dispute **any** of the admissions from her interviews with Pollard which are cited in City Market's Motion for Summary Judgment. See e.g. City Market's Motion for Summary Judgment p. 9-11 [Docket # 51]. For example, Plaintiff does not dispute that she changed her story to Pollard on multiple occasions as to whether she performed her own pay adjustment, or that she claimed she never saw the email posted in the bookkeeping office warning her not to perform the adjustment in the manner it was done. [Docket # 51, p. 10]. She does not dispute these admissions because she confirmed they were accurate in her deposition.

Similarly, Plaintiff does not point to any evidence that Pollard has disagreed with any of her alleged inconsistencies or omissions from the transcript. For example, Hart claims that Pollard's report omits the fact that Hart "became emotionally upset" and Rusty Hector handed her some tissues. (Motion, Ex. E, ¶ k). Hart does not argue, however, that City Market disputes these facts or that she will be impeded, in any way, from presenting this evidence at trial. In fact, Pollard has freely admitted that he omitted from the report things he did not deem relevant, such as his introduction at the beginning of the meeting (Ex. 1, pp. 58/4-59/12). Pollard has never claimed that his report was a "word for word" transcript.

---

[1] Although Plaintiff expands the list in her new Affidavit, the vast majority of the new "inaccuracies" are conversations that occurred in a different room (and thus were not recorded anyway) or petty and irrelevant issues. For example, Hart complains that Pollard left out a question from Eric Bard, but does not allege that the question was relevant or material. (Motion, Ex. E ¶ f).

Equally important, there is other evidence aside from the transcript of the meetings. Both Pollard and Bard took handwritten notes of the interviews, which have been produced in discovery. (Ex. 4, 5).

Courts in the Tenth Circuit have declined to impose sanctions where alternative means to refute the evidence exists. In *Chavez v. Hatterman*, the plaintiff alleged he was tased by a police officer for eight (8) continuous minutes. *Chavez v. Hatterman*, Civil Action No. 06-cv-02525-WYD-MEH, 2009 U.S. Dist. LEXIS 30580 (D. Colo. January 20, 2009). The taser subsequently malfunctioned and was sent to the manufacturer for repair. *Id*. No data, however, was ever captured from the taser. *Id*. The plaintiff alleged that this failure to preserve the taser data should result in sanctions against the defendants. *Id*. The court disagreed and, instead, found the plaintiff was not prejudiced by the failure to provide taser data because the lost data could not possibly have shown that the taser was used for eight continuous minutes, but only that it was used against the plaintiff, a fact the defendants did not dispute. *Id*. Furthermore, the court reasoned that there were witnesses to the incident, including the plaintiff himself; and, thus, the plaintiff would be free to testify concerning what he experienced. *Id*.

Similarly, in *OTO Software, Inc. v. Highwall Techs., LLC*, the court declined to impose spoliation sanctions where duplicative documentary evidence was available. *OTO Software, Inc. v. Highwall Techs., LLC*, Civil Action No. 08-cv-01897-PAB-CBS, 2010 U.S. Dist. LEXIS 101516 (D. Colo. Sept. 27, 2010) (citing *Mathias v. Jacobs*, 197 F.R.D. 29, 38-39 (S.D.N.Y. 2000)). In *FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 U.S. Dist. LEXIS 56447 *15-20 (D. Kan. Jan. 26, 2011), the court declined to award sanctions where the defendant destroyed paper copies of sales call sheets but produced digital copies. The plaintiff argued prejudice because the hardcopies of the call sheets might have contained handwritten notes

which the digital copies did not contain. The court found this to be a possibility but denied plaintiff's motion due to the speculative nature of plaintiff's argument and because plaintiff could call the sales people who used the call sheets to testify at trial.

Similarly, in *Blangsted v. Snowmass-Wildcat Fire Prot. Dist.*, 642 F.Supp.2d 1250, 1262 (D. Colo. 2009), the plaintiff recorded his termination meeting but later lost the recording and was accused of spoliation. The court noted that the degree of prejudice to the defendant for the loss of the recording was "relatively small" because there was significant other evidence supporting the plaintiff's theory of the case. There was little dispute about what was said during the termination meeting, the dispute about what did transpire was not the deciding factor in this case, and the defendant's employees testified about their version of what transpired during the termination meeting. The *Blangsted* case is directly on point and the same logic should apply.

Analogous to the circumstances in *Chavez*, *OTO*, and *Blangsted*, this is not a case where there is an absence of any record whatsoever of the interviews. The additional handwritten notes of the interviews and Pollard's report of the interviews, coupled with Plaintiff's own recollections of the interviews, provides more than sufficient evidence of what transpired. Under these facts, Plaintiff is not left in the dark on any matter relevant to her case, and there is simply no prejudice to Plaintiff.

Plaintiff's reliance on *EEOC v. Dillon Companies, Inc.*, 893 F.Supp.2d 1141, 1144 (D. Colo. 2011) is misplaced. In *EEOC v. Dillon*, there were no other witnesses to the incident recorded on the video tape, the plaintiff's version of the incident was markedly different than the version explained by the company, and the incident depicted on the video tape was the sole explanation for the plaintiff's termination. In allowing sanctions for spoliation of evidence, the court reasoned that, without the video tape, the plaintiff would be unable to ascertain whether the

company's version of the events were supported and unable to counter the testimony of the company's witnesses who watched the video. Those facts are completely distinguishable from the circumstances presented in this case.

Here, Plaintiff can, and did, dispute the inaccuracies in the transcript, which were only minor and immaterial. There is no argument that City Market relied upon any disputed statements in Pollard's report in making the decision to terminate Plaintiff. Plaintiff's counsel can adequately cross examine Pollard as to his independent recollection of any facts not included on the report, as compared to the lack of an effective opportunity for cross examination in the *EEOC* case. Other independent evidence exists to commemorate the meetings, and other independent evidence exists to support the reason for Plaintiff's termination.

With this mountain of additional evidence for her termination (even putting aside Pollard's report), Plaintiff cannot demonstrate she suffered any actual harm. Rather, Plaintiff can offer nothing more than a theoretical claim of prejudice, which is insufficient to warrant sanctions for spoliation of evidence. *See Burlington Northern & Santa Fe Ry. v. Grant*, 505 F.3d at 1032-33 (court denied motion for spoliation sanctions because plaintiff was not meaningfully prejudiced by removal and destruction of evidence where there were other documents generated and the factual disputes were negligible). The Motion should be denied.

### C. There Is Absolutely No Evidence Of Bad Faith By City Market.

As a general rule, the "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Here, there is no evidence that City Market acted in bad faith.

Plaintiff's reliance on *McCargo v. Texas Roadhouse, Inc.*, No. 09-cv-02889-WYD-KMT, 2011 U.S. Dist. LEXIS 49320 (D. Colo. May 2, 2011) is equally flawed and inapposite. In *McCargo*, there was evidence that, even after reading a preservation letter, a decision was made not to preserve video footage. The court found this conduct to be "conscious and willful." *See id*. at *23. Additionally, in finding bad faith, the court also considered other behavior, including the company's corporate human resources representative's failure to take notes when conducting interviews with the defendant's employees regarding one of the incidents, the company's assertion that it represented every employee of Texas Roadhouse, and the company's refusal to allow the plaintiff's counsel to conduct her own interviews with those employees in an obvious attempt to keep the plaintiff from obtaining evidence. *See id*. at *24. The court found this conduct to be "calculated" and well beyond corporate arrogance.

First, contrary to Plaintiff's contention, City Market did, in fact, issue a litigation hold memorandum on March 1, 2012, soon after being served with the lawsuit. *See* Pollard Affidavit ¶ 4, attached as Exhibit 3. Such action by City Market is completely contrary to Plaintiff's characterization of its actions as "callous indifference." By that time, Pollard had already unintentionally recorded over the interviews with Plaintiff. (Ex. 1, pp. 17/25-18/19; Ex. 3, ¶ 5).

Importantly, however, there was nothing deliberate, willful or malicious about Pollard's actions. According to Pollard, he used a digital recorder, and as the recorder filled with information, he erased the oldest recordings to create additional space. It was mere coincidence, and not intentional, that the recordings of the interviews with Plaintiff were in line for erasure. (Ex. 1, pp. 16/6-17/21). Even more importantly, Pollard took thorough handwritten notes of the interviews, and used those notes in conjunction with the digital recordings to transcribe a written record of the meetings. (Ex. 4). Pollard testified that he attempted to create the most accurate

11

account of the meetings through the transcription, and spent as much as 7 hours reviewing the recordings and creating the transcript, listening to portions of the recordings more than once and comparing his notes with the recordings. (Ex. 1, pp. 54/24-55/12, p. 56/1-4). Further, Pollard admitted that, following the meetings, he did not inform anyone at City Market that he made a tape recording or that he subsequently erased it. (Ex. 1 p. 19/1-9).

Throughout the course of discovery, City Market made every good faith effort to comply with its obligations for the production of documents and information. In this single plaintiff case, City Market has produced more than 900(+) pages of documents. (Ex. 2, ¶ 7). After litigation commenced, and City Market learned of the erasure of the recordings, it attempted, at its own expense, to recover the data by using a forensic consultant. (*Id*. at ¶ 6) As it turned out, the recorded interviews were unrecoverable, but nonetheless, City Market still offered Plaintiff an opportunity to engage her own forensic IT team for recovery purposes, which Plaintiff declined. *See id*.

Despite all of City Market's transparency in discovery, Plaintiff would have this Court believe that City Market deliberately intended to hide the ball and destroy evidence. Plaintiff's argument flies in the face of logic. Common sense suggests that the bad faith destruction of evidence would arise under circumstances when the evidence is unfavorable or disproves a claim. Had the interviews been unfavorable to City Market, and in support of Plaintiff, it is highly doubtful Pollard would have gone to such great lengths to create an accurate transcript of the meetings. It is also counter-productive for City Market to destroy a recording of admissions from the Plaintiff that would potentially be useful in defense of this litigation. To the contrary, there is no reason for Pollard to destroy a recording that he believes supports his position. The

loss of a recording of Plaintiff, wherein she makes conflicting statements and admits to misconduct in her own words, hurts City Market far worse than the Plaintiff in this case.

Absent a showing of bad faith, Plaintiff is not entitled to an adverse inference instruction at trial. No adverse inference should arise where the destruction of a document resulted from mere negligence, because only bad faith would support an "inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d at 1407. "'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *See OTO*, *supra*, at n. 6 (citing *Attorneys Title Guaranty Fund v. Goodman*, 179 F. Supp. 2d 1268, 1277 (D. Utah 2001)).

Nothing about the facts in this case even remotely rises to the level of egregiousness found in *McCargo*. The facts are completely devoid of any evidence of bad faith; and this Court cannot impose a dispositive sanction or give an adverse inference instruction at trial. *See OTO*, at *40.

### D.     Plaintiff Is Not Entitled To Any Evidentiary Or Monetary Sanctions.

While lesser sanctions may be appropriate even in the absence of bad faith, under the facts of this case, there is no basis to award lesser evidentiary or monetary sanctions against City Market. *See OTO*, at *40-41 ("Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been [in] without spoliation." *Cf. Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (spoliation sanctions are intended to "level the evidentiary playing field," as well as penalize the offending party). In striving to "level the playing field," there must be some reasonable relationship between the sanction imposed and the prejudice actually suffered by the moving party. *See*

*Larson v. Bank One Corp.*, 2005 U.S. Dist. LEXIS 42131, 2005 WL 4652509, at *14 (N.D. Ill. 2005). *Cf. In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 200 (S.D.N.Y. 2007) ("in the process of leveling the playing field, care must be taken not to tilt it too far in favor of the party seeking sanctions.")). For instance, courts impose evidentiary sanctions when the physical evidence has been destroyed and there is no alternative source for that same information. *See 103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 988-89 (10th Cir. 2006). *Compare Mathias v. Jacobs*, 197 F.R.D. 29, 38-39 (S.D.N.Y. 2000) (declining to impose spoliation sanctions where duplicative documentary evidence was available), *order vacated on other grounds*, 167 F. Supp. 2d 606 (S.D.N.Y. 2001).

Here, there are numerous alternative sources of information. Both Pollard and Bard made contemporaneous handwritten notes of the interviews, both were deposed, and Plaintiff was herself an active participant during the interviews. There is no dispute that other evidence of the interviews exists and Plaintiff has had a fair opportunity to make her case.

In regard to the question of evidentiary sanctions, such a ruling is premature. The Court has any number of options at trial to limit evidence or instruct the jury in a manner to avoid prejudice to Plaintiff. Those decisions are best left for a time and place where the Court can evaluate all of the evidence and make a more informed ruling on exactly where the balance between each party should be struck. For example, Plaintiff's request that City Market be "prohibited" from presenting evidence on Pollard's investigation altogether (Motion, p. 14) is unfairly prejudicial to City Market and too harsh of a sanction. Pollard should be allowed to testify and Plaintiff should be allowed to cross examine him regarding the deletion of the recording. If the case goes to trial, City Market respectfully suggests that the Court should err in

favor of letting the jury hear from both sides, and make up its own mind about whether anything important was omitted from Pollard's report.

Monetary sanctions are also inappropriate. Such sanctions are typically recoverable in spoliation cases to defray the discovery costs associated with identifying and pursuing alternative sources of information. *See OTO*, at *45 (citing *Turner v. Hudson Transit Lines*, 142 F.R.D. at 78 (internal citations omitted)). Here, there is no such need. The notes, the transcript, and Plaintiff's own recollections are all readily available to Plaintiff. In *OTO*, the court only imposed a sanction of reasonable fees and costs where it was necessary for Plaintiff to order documents through a third party, and for no other reason. *See OTO*, at *45. Plaintiff relies on *United States v. Philip Morris USA, Inc.*, 327 F.Supp.2d 21, 26 (D.D.C. July 21, 2004) as support for her entitlement to monetary sanctions. However, *Philip Morris* involved egregious acts of destruction and non-disclosure, none of which are present here. In *Philip Morris*, the court imposed monetary sanctions because, despite the court's order mandating preservation of certain documents, the company deleted email on a monthly system-wide basis for a period of at least two (2) years after the issuance of the order, and then waited an additional four (4) months to notify the court after it learned of the failed compliance with the court's order. *See id*. at 23-24.

Nothing about City Market's actions rises to the level of blameworthiness appropriate for evidentiary or monetary sanctions and Plaintiff has not engaged in any discovery she would not otherwise have undertaken, i.e. Pollard was already a witness. Plaintiff could have hired an expert to attempt to recover the deleted recordings but left that expense to City Market. In fairness, Plaintiff cannot now argue that City Market should be sanctioned for extra litigation costs when City Market has already absorbed the extra expense as a good faith measure.

## IV.
## CONCLUSION

For the reasons stated herein, City Market respectfully requests that Plaintiff's Motion for Sanctions for Spoliation of Evidence be denied.

                Respectfully Submitted,

                /s/ David L. Barron
                David L. Barron
                Texas Bar No. 00798051
                Norasha L. Williams
                Texas Bar No. 24013759
                COZEN O'CONNOR
                LyondellBasell Tower
                1221 McKinney Street, Suite 2900

Of Counsel:              Houston, TX  77010
                Phone:  (832) 214-3900
Mark A. Bartholomaei, #40702    Fax:  (832) 214-3905
COZEN O'CONNOR            dlbarron@cozen.com
707 17th Street, Suite 3100        nwilliams@cozen.com
Denver, CO 80202
Phone: (720) 479-3900
Fax: (720) 479-3890            *Counsel for Defendant Dillon Companies, Inc.*
mbartholomaei@cozen.com      *d/b/a City Market*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing ***Defendant Dillon Companies, Inc. d/b/a City Market's Response to Plaintiff's Motion For Sanctions for Spoliation of Evidence*** was served via ECF and email, on this 28th day of February 2013, upon the following parties:

Reid B. Kelly
The Kelly Law Firm, LLC
4440 N. Pagosa Blvd.
Pagosa Springs, CO 81147
Attorney for Plaintiff Debra Hart
reid@kellylawcolorado.com

            /s/ David L. Barron
            David L. Barron

HOUSTON\597340\1