**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-00238-RM-DW

DEBRA A. HART,

       Plaintiff,

v.

DILLON COMPANIES, INC., a Kansas corporation, d/b/a City Market,

       Defendant.

---

## ORDER

---

      This matter is before the Court on Defendant Dillon Companies, Inc.'s ("City Market")

motion for summary judgment (ECF No. 51) as well as Defendant's objections to parts of

Plaintiff Debra A. Hart's ("Hart") evidence (ECF No. 63) submitted in opposition to Defendant's

motion for summary judgment.

      Defendant moves for summary judgment as to each of Plaintiff's claims related to

Defendant's terminating Plaintiff's employment.  (ECF No. 51.)  Plaintiff claims Defendant

violated (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §

2000e-3 *et seq.* by retaliating against her; (2) the Age Discrimination in Employment Act

("ADEA"), as amended, 29 U.S.C. § 621-634 (2012)[1]; and (3) state common law, *i.e.*, Defendant

breached a contract with Plaintiff.  (ECF No. 6.)

---

[1] A prior ruling in this case limited Plaintiff's age discrimination claim solely to Defendant's terminating her employment and no other allegations.  (ECF No. 35.)

For the reasons stated below, the Court (1) SUSTAINS, in part, Defendant's objections to parts of Plaintiff's evidence submitted in opposition to Defendant's motion for summary judgment and (2) GRANTS Defendant's motion for summary judgment as to each of Plaintiff's claims.

## I.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id*. The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for [her]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

## II.   UNDISPUTED AND MATERIAL FACTUAL BACKGROUND[2]

The facts as recited below are based on adequate citations to the record which would be admissible at trial.  The facts are recited in a light most favorable to the non-moving party.

### A.   Employment History

Beginning in 1990, Defendant employed Plaintiff as a courtesy clerk, checker, scanning coordinator, customer relations manager, head bookkeeper and customer service representative at several of its various stores in Colorado.  (ECF No. 52-3, Hart Dep. 35:15-21, 36:8-14, 104:24-105:1.)  At one of its stores in Pagosa Springs, Colorado, "Store 438" (ECF No. 52-3, Hart Dep. 36:8-14), Plaintiff was promoted from assistant bookkeeper to head bookkeeper (ECF No. 52-3, Hart Dep. pp. 41-44).  While at Store 438, Plaintiff worked under a number of different store managers including Rusty Hector ("Hector"), Michelle Garcia ("Garcia"), and Tony Redden ("Redden").  (ECF No. 52-3, Hart Dep. 37:16-25, 44:21-24.)

In 2010, Plaintiff transferred to another of Defendant's stores, "Store 445."  (ECF No. 52-3, Hart Dep. 118:5-119:3.)  At the time of the transfer, the head and assistant bookkeeping positions were already filled at Store 445.  (ECF No. 52-3, Hart Dep. 104:19-23.)  Prior to her transfer, Plaintiff was allowed to pick her top three desired positions and prioritize them.  (ECF No. 52-3, Hart Dep. 103:6-10.)  Defendant assigned Plaintiff to her first choice, the service counter position at Store 445.  (ECF No. 52-3, Hart Dep. 103:11-18, 104:24-105:1.)  Shortly after her transfer, Defendant, through two individuals one of whom was Hector, assigned Plaintiff to handle backup bookkeeping duties at Store 445.  (ECF No. 52-3, Hart Dep. 118:5-119:3.)  As a backup bookkeeper, Plaintiff filled in for the head or assistant bookkeeper when

---

[2] This case was reassigned to the Court on May 1, 2013.  (ECF No. 68.)  Accordingly, the Court's practice standards are not applicable to any motions or briefs submitted prior to then.

either was absent or on vacation.  (ECF No. 52-3, Hart Dep. 120:19-121:4.)  Typically, Plaintiff

was assigned one bookkeeping shift per week.  (ECF No. 52-6, Apodaca Aff. ¶ 7.)

Plaintiff applied for a pharmacy position at Store 445 and had taken a test necessary for

the position.  (ECF Nos. 60-2, Hart Dep. 22:25-23:5; 60-3, Hart Dep. 266:24-268:20.)

Defendant did not select Plaintiff for that pharmacy position.  (*Id*.)

### B.    Alleged Protected Conduct

In 2005, during Plaintiff's time at Store 438, Garcia filed an age discrimination lawsuit

against Defendant.  (ECF No. 52-5.)  At the inception of Garcia's lawsuit, Plaintiff met with

Garcia's lawyer.  (ECF No. 52-3, Hart Dep. 50:9-21.)  Deborah Ross ("Ross"), from Defendant's

Human Resources Department, became aware of Plaintiff's meeting with Garcia's lawyer and

telephoned Plaintiff to ask her questions about that meeting.  (ECF No. 52-3, Hart Dep. 60:9-

61:12.)  Subsequent to that telephone conversation between Ross and Plaintiff, neither Ross nor

any other Defendant management employee discussed the Garcia lawsuit with Plaintiff.  (ECF

No. 52-3, Hart Dep. 61:10-12, 74:11-75:21.)

### C.    Discriminatory Comment

At some point during Plaintiff's employment, Ross made a comment that if Defendant

could "cut out the B tier, you know, get rid of the older employees eventually . . . then

[Defendant] could compete with Wal-Mart at some point."  (ECF No. 60-3, Hart Dep. 266:7-19.)

### D.    Incident That Led to Plaintiff's Termination and Subsequent Events

When Plaintiff filled in as a bookkeeper at Store 445, her rate was to be $15.15 per hour.

(ECF No. 52-3, Hart. Dep. 122:25-123:18; ECF No. 52-6, Apodaca Aff. ¶ 8.)  At Store 445, the

rate for the head bookkeeper was $16.55 per hour.  (ECF No. 52-3, Hart Dep. 123:6-124:21;

ECF No. 52-6, Apodaca Aff. ¶ 8.)  In the fall of 2010, Defendant discovered that when Plaintiff

had filled in as an assistant bookkeeper at Store 445, Defendant's payroll system ("KRONOS") improperly paid Plaintiff an hourly rate of $16.55.  (ECF No. 52-6, Apodaca Aff. ¶ 8.) Defendant then deducted the overpayment from Plaintiff's paycheck and Plaintiff did not object. (ECF No. 52-3, Hart Dep. 125:21-126:7.)

On December 9, 2010, David Dacus ("Dacus") of the Kroger Company sent an email to Rhonda Toland ("Toland") at Defendant's corporate office which stated that KRONOS would automatically pay Plaintiff at the head bookkeeper rate if her job code was changed from service counter to bookkeeping, *i.e.*, from "SC" to "BK."  (ECF No. 52-6, Apodaca Aff. ¶ 9; ECF No. 52-7, Bookkeeping Email 12/9/10.)[3]  Dacus instructed that Plaintiff, when working as a bookkeeper, should receive a pay adjustment solely through someone entering a relief rate of $15.15 for her rather than changing her job code.  (ECF No. 52-7, Bookkeeping Email 12/9/10.) Toland then sent the email to Rebeccah Apodaca ("Apodaca") who was Store 445's head bookkeeper. (*See* ECF No. 52-7; ECF No. 52-6, Apodaca Aff. ¶ 9.)  Apodaca posted the email regarding how to correctly pay Plaintiff on the bulletin board in the bookkeeping office.  (ECF No. 52-6, Apodaca Aff. ¶ 10; ECF No. 52-8, Smith. Dep. 64:20-66:6.)  Only Apodaca or Smith would adjust Plaintiff's pay for Plaintiff when she worked in bookkeeping at Store 445.  (ECF No. 52-3, Hart. Dep. 122:14-19.)  When Plaintiff worked at Store 438, Garcia had knowledge that Plaintiff would enter and adjust her own pay codes.  (ECF No. 60-5, Garcia Aff. ¶ 5.)  When Plaintiff worked at Store 438, Redden had knowledge that Plaintiff would enter her own pay and adjust it subject to a manager's verification or approval.  (ECF No. 60-6, Redden Dep. 21:8-17.)

During the week of July 4, 2011, Apodaca was absent from work.  (ECF No. 52-6, Apodaca Aff. ¶ 12.)  Thus, Plaintiff worked as an assistant bookkeeper during that week.  (ECF

---

[3] Plaintiff cites that on a legal holiday, the entry of "BK" into the KRONOS system did not automatically result in an improper payment to Plaintiff.  (ECF No. 60-9, Toland Dep. 47:16-20.)

No. 52-3, Hart Dep. 124:1-21.)  On July 8, 2011, Plaintiff entered the KRONOS system under a

coworker's identification.  (ECF No. 52-3, Hart Dep. 152:8-14; *see also* ECF No. 52-9,

KRONOS Record.)  Defendant's system, KRONOS, does not allow an employee to enter his or

her own timecard information under their own user identification and password.  (ECF No. 52-6,

Apodaca Aff. ¶ 11.)  On July 8, 2011, both Apodaca and Betty Smith ("Smith" who was Store

445's Assistant Bookkeeper (ECF No. 52-3, Hart Dep. 124:1-21)) were absent from the

bookkeeping office.  (ECF No. 52-10, July 2011 Weekly Schedule.)  Plaintiff changed her job

codes for the week of July 3 through July 9, 2011 from "SC" (Service Counter) to "BK"

(Bookkeeping).  (ECF No. 52-3, Hart Dep. 176:2-10.)  Plaintiff was paid the higher rate of

$16.55 per hour for July 8, 2011 despite entering the correct relief rate.  (ECF No. 52-12, Toland

Dep. 22:13-22.)  Prior to July 8, 2011, Plaintiff had not adjusted her own pay while at Store 445.

(ECF No. 52-3, Hart Dep. 156:8-10.)  Further, Smith was working that week and could have

adjusted Plaintiff's pay.  (ECF No. 52-3, Hart Dep. 156:6-7.)

Subsequently, Smith discovered that Plaintiff had changed her own job codes.  (ECF No.

52-8, Smith Dep. 28:22-29:15.)  A Store 445 assistant manager instructed Smith to rescind the

change in job codes but Smith failed to do so properly.  (ECF No. 52-8, Smith Dep. 12:23-

14:10.)  Defendant did not discipline Smith for failing to correct Plaintiff's change in job codes.

(ECF No. 60-15, Ross Dep. 34:7-47:12.)

Following the discovery of Plaintiff's actions, Steve Pollard, who worked for Defendant,

investigated Plaintiff's conduct.  (ECF No. 52-3, Hart Dep. 197:10-17.)  Pollard interviewed

Plaintiff more than once.  (ECF No. 52-3, Hart Dep. 197:10-17.)  Defendant, in part, relied upon

Pollard's investigation in making its decision to terminate Plaintiff.  (ECF No. 53-8, Ross Dep.

43:2-14.)  During the second interview, Plaintiff admitted in a written statement that she had

adjusted her own pay by changing the job codes from SC to BK.  (ECF No. 52-11, Hart Statement 8/6/11.)

On August 16, 2011, Defendant suspended Plaintiff pending its determining whether to terminate her.  (ECF No. 52-14.)  Defendant did not suspend Plaintiff for using another coworker's identification and password.  (ECF No. 60-7, Ross Dep. 63:2-64:14.)

On August 23, 2011, Defendant informed Plaintiff that she would be terminated for (1) dishonesty and (2) violation of Defendant's policies/procedures.  (ECF No. 52-3, Hart Dep. 236:20-22; *see* ECF No. 52-15.)  Defendant determined that Plaintiff engaged in dishonest or "untruthful" conduct by changing her job code and being less than credible during Pollard's investigation.  (ECF No. 60-4, Hector Dep. 91:1-10.)  Defendant has a policy which prohibits "recording time on timecards/time and attendance system, for which no work was performed, or to otherwise achieve compensation in an amount greater than what was actually due."  (ECF No. 52-20 at 4.)  The individuals responsible for making the decision to terminate Plaintiff were Ross, Hector, and Tom Bell.  (ECF No. 52-2, Ross Aff. ¶ 4.)  Ross did not consider Redden's recommendation in determining whether to terminate Plaintiff's employment.  (ECF No. 60-7, Ross Dep. 45:6-46:5.)

Defendant had a multi-step policy by which employees could appeal adverse employment decisions to which they disagree.  (ECF No. 52-16, Dispute Resolution Guideline.)  On September 1, 2011, Plaintiff initiated Defendant's internal dispute resolution process ("Dispute Resolution Process") regarding her termination.  (ECF No. 60-18.)  The parties engaged in the first two levels of the Dispute Resolution Process.  (ECF No. 52-3, Hart Dep. 250:25-252:12; ECF No. 52-17; ECF No. 52-18.)  On November 7, 2011, pursuant to the Dispute Resolution Process, Defendant declined to arbitrate Plaintiff's termination.  (ECF No. 52-19.)  Defendant

declined to arbitrate Plaintiff's termination on the basis that she intended to "litigate the matter." (ECF No. 60-7, Ross Dep. at 90:20-91:2.)  Nothing requires Defendant to agree to arbitrate to an employee's request for arbitration.  (ECF No. 52-16, Dispute Resolution Guideline.)

## III.   ANALYSIS

### A.   Defendant's Objections to Evidence Submitted by Plaintiff in Opposition to Defendant's Motion for Summary Judgment

#### 1.   Plaintiff's Exhibit 27- Colorado Department of Labor and Employment Hearing Officer's Decision

The unemployment decision (ECF No. 60-1) from the Colorado Department of Labor and Employment is inadmissible.  Colo. Rev. Stat. Ann. § 8-74-108 (West 2012).  Section 8-74-108 of the Colorado Revised Statutes provides that unemployment decisions, with certain exceptions not applicable to the present matter, cannot be used as evidence or as a binding determination:

> No finding of fact or law, judgment, conclusion, or final order made with respect to (a) determination made under Article 70-82 of this Title may be conclusive or binding or used as evidence in any separate or subsequent action or proceeding in another forum, except for proceedings under Article 70-82 of this Title, regardless of whether the prior action is between the same or related parties or involve the same facts.

*Id*.  Courts have refused to admit such decisions for similar purposes as that for which Plaintiff seeks in this matter.  *White v. Okla.*, 552 F. App'x 840, 849 (10th Cir. 2014) (unpublished), *Makeen v. Comcast of Colorado X, LLC*, Case No. 09-CV-02595-WYD-MEH, 2011 WL 3300392, at *6 (D. Colo. May 6, 2011), *adopted in Makeen v. Comcast Cable Commc'ns, LLC*, 2011 WL 3300389 (D. Colo. Aug. 2, 2011); *Salida Sch. Dist. R-32-J v. Morrison*, 732 P.2d 1160, 1165 (Colo. 1987).

Plaintiff argues that collateral estoppel principles enable the Court to consider this evidence.  (ECF No. 67 at 1-4.)  Plaintiff, however, fails to note that the Colorado legislature has

explicitly precluded the Court from using collateral estoppel principles in this type of instance.

Colo. Rev. Stat. Ann. § 8-74-108.

For these reasons, the Court sustains Defendant's objection to Plaintiff's Exhibit 27 (ECF

No. 60-1) and it will not be considered as it relates to Defendant's motion for summary

judgment.

2.    Plaintiff's Exhibit 30- Affidavit of Michelle Garcia

a.    *Paragraph 5*

Defendant objects to Paragraph 5 of Plaintiff's Exhibit 30 (ECF No. 60-5 at ¶ 5) which

regards Plaintiff's entering "her own time and adjusting her own pay codes when necessary."

Plaintiff's Exhibit 30 identified that the statements contained within Garcia's affidavit are based

on her "personal knowledge." (ECF 60-5 at ¶ 2.) Thus, with a showing of personal knowledge,

the statement is properly before the Court. Fed. R. Evid. 602, 701. For this reason, the Court

overrules Defendant's objection to Paragraph 5 of Plaintiff's Exhibit 30.

b.    *Paragraph 10*

Defendant objects to Paragraph 10 of Plaintiff's Exhibit 30 (ECF No. 60-5 at ¶ 10) which

regards matters discussed during Plaintiff's telephone conversation with Ross. Plaintiff's Exhibit

30 identified that the statements contained within Garcia's affidavit are based on her "personal

knowledge." (ECF No. 60-5 at ¶ 10.) Thus, with a showing of personal knowledge, the

statement is properly before the Court. Fed. R. Evid. 602, 701. For this reason, the Court

overrules Defendant's objection to Paragraph 10 of Plaintiff's Exhibit 30.

c.    *Paragraph 13*

Defendant objects to Paragraph 13 of Plaintiff's Exhibit 30 (ECF No. 60-5 at ¶ 13) which

regards Garcia's claim that Defendant "retaliated against [her] for complaining of sex and age

10

discrimination" and Hector "intimidate[d]" her.  The Court agrees that the former statement is a conclusory legal opinion unsupported with any factual or legal basis and is therefore not properly before the Court.  *See Hook v. Regents of the Univ. of Cal.*, 394 F. App'x 522, 533 (10th Cir. 2010) (unpublished) (holding that conclusory statements in an affidavit are properly disregarded in considering a summary judgment motion as those statements are insufficient to raise a genuine issue of material fact).  The Court agrees that the latter statement is speculative and thus not competent summary judgment evidence.  *See Murray*, 45 F.3d at 1422.  For these reasons, the Court sustains Defendant's objection to Paragraph 13 of Plaintiff's Exhibit 30.

> d.   *Paragraph 14*

Defendant objects to Paragraph 14 of Plaintiff's Exhibit 30 (ECF No. 60-5 at ¶ 14) which regards Defendant's alleged retaliation against Garcia.  This statement is a conclusory legal opinion and the Court will not consider it.  *Hook*, 394 F. App'x at 533.  For this reason, the Court sustains Defendant's objection to Paragraph 14 of Plaintiff's Exhibit 30.

> 3.   Plaintiff's Exhibit 35- Leora M. Mannara Charge of Discrimination

Defendant objects to Plaintiff's Exhibit 35 (ECF No. 60-10) which regards Leora Mannara's Charge of Discrimination on the basis that it constitutes hearsay.  Although the charge is an official public record, the charge itself does not set forth the office's activities and thus constitutes impermissible hearsay.  Fed. R. Evid. 803(8)(a)(i).  For this reason, the Court sustains Defendant's objection to Plaintiff's Exhibit 35.

> 4.   Plaintiff's Exhibit 38- Plaintiff's Affidavit

> a.   *Paragraph 8*

Defendant objects to Paragraph 8 of Plaintiff's Exhibit 38 (ECF No. 60-13 at ¶ 8) which regards an "assignment meeting" for purposes of transferring Plaintiff to Store 445.

Plaintiff stated that the statements contained within her affidavit are based on "personal knowledge." (ECF No. 60-13 at ¶ 2.)   Thus, with a showing of personal knowledge, the statement is properly before the Court.  Fed. R. Evid. 602, 701.  For this reason, the Court overrules Defendant's objection to Paragraph 8 of Plaintiff's Exhibit 38.  The Court, however, notes that Redden did not exclude Ross from being present in the decision to transfer Plaintiff and that Redden himself was not involved.  (*See* ECF No. 60-6 at 4, Redden Dep. 28:5-14.)

5.   <u>Plaintiff's Exhibit 39- Affidavit of Kim McNamara</u>

Defendant objects to Plaintiff's use of an affidavit submitted by Kim McNamara (ECF No. 60-14) on the basis that she was not timely disclosed during discovery as a person with knowledge of relevant facts pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  Plaintiff does not contest that she failed to disclose Ms. McNamara.  (*See generally* ECF No. 67 at 9-11.)  Rule 37(c)(1) of the Federal Rules of Civil Procedure precludes a party from using a witness to supply evidence on a motion if it fails to comply with Rule 26(a).  Fed. R. Civ. P. 37(c)(1).  Plaintiff has not shown that the failure to disclose was "substantially justified" or was "harmless."  For this reason, the Court sustains Defendant's objection to Plaintiff's Exhibit 39.

**B.   Defendant's Motion for Summary Judgment**

1.   <u>ADEA- Age Discrimination Claim</u>

a.   *Burden of Proof and Elements*

Under the ADEA, it is unlawful for an employer to discharge an individual because of that individual's age.  29 U.S.C. § 623(a).  The ADEA, however, does not require an employer to evaluate their employees perfectly, fairly, or even rationally – employers are free to exercise their sound business judgment in personnel matters and may discipline and terminate at-will employees for any reason, so long as such termination is not unlawful.  *See Adamson v. Multi*

*Community Diversified Servs., Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008). Under the ADEA, a plaintiff must show by a preponderance of the evidence that age was the "but-for" cause for the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that a "mixed motives" claim is unavailable under the ADEA which is in contrast to Title VII). "Unlike Title VII . . . 'the ADEA's text does not provide that plaintiff may establish discrimination by showing that age was simply a motivating factor.'" *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949 (10th Cir. 2011). To prevail on an ADEA claim, it is "the employee's burden to show that age was the 'but for' cause of the action." *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1193 (10th Cir. 2010) (citation omitted). While Plaintiff is not required to show that age solely motivated Defendant, he must show that "age was the factor that made a difference." *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quotation omitted).

When there is no direct evidence of discrimination, ADEA claims are evaluated based upon the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) ("*McDonnell Douglas*"). *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557-58 (10th Cir. 1996). Under the *McDonnell Douglas* framework, Plaintiff bears the burden initially of establishing a *prima facie* case of discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996). In order to establish a *prima facie* case of age discrimination, Plaintiff must show that she was: (1) within the protected class of individuals (40 or older); (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person or the position was not filled. *Adamson*, 514 F.3d at 1146.

If Plaintiff establishes a *prima facie* case, there is a presumption that her termination and Defendant's actions leading up to it were, in fact, based on her age. The burden of production

then shifts under *McDonnell Douglas* to Defendant to rebut this presumption by articulating a

legitimate, nondiscriminatory reason for its action. *See id*. Once Defendant does so, the

presumption drops and Plaintiff resumes her full initial burden of proving that age discrimination

was the "but for" cause of Defendant's actions. *See id*. (quoting *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 506 (1993)). Under *McDonnell Douglas*, a plaintiff may meet this ultimate burden

by demonstrating that the employer's proffered reasons are pretexts for unlawful discrimination.

*See id*. "A plaintiff produces sufficient evidence of pretext when she shows 'such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy

of credence and hence infer that the employer did not act for the asserted non-discriminatory

reasons." *Jones*, 617 F.3d at 1280 (quoting *Jaramillo*, 427 F.3d at 1308).

> b.   *Hart Fails to Establish Defendant's Reasons for Terminating Her*
> *Employment are Pretext for Age Discrimination*

Defendant does not contest Plaintiff's ability to establish the *prima facie* elements of an

ADEA claim. (ECF No. 51 at 15.) Defendant argues that it terminated Plaintiff's employment

because she was (1) dishonest and (2) violated Defendant's policies/procedures. (ECF No. 52-3,

Hart Dep. 236:20-22; *see* ECF No. 52-15.) Defendant determined that Plaintiff engaged in

dishonest or "untruthful" conduct by changing her job code and being less than credible during

Pollard's investigation. (ECF No. 60-4, Hector Dep. 91:1-10.) Plaintiff admitted to Defendant

that she changed her job code. (ECF No. 52-11, Hart Statement 8/6/11.)

In opposition to Defendant's motion for summary judgment, Plaintiff argues that she was

not dishonest and Defendant's reasons are pretextual[4]. (ECF No. 60 at 3-22.) Plaintiff argues

---

[4] Plaintiff argues that Defendant is barred by collateral estoppel from relitigating its reasons for terminating Plaintiff
and that a hearing officer for the Colorado Department of Labor and Employment found Defendant's reasons for
terminating Plaintiff not to be credible. (ECF No. 60 at 3-7.) Plaintiff's arguments as to collateral estoppel and the

that Defendant has changed and provided inconsistent reasons for terminating her. (ECF No. 60 at 7-10.) The Court is not persuaded by Plaintiff's argument. Defendant informed Plaintiff that it terminated Plaintiff for dishonesty and violating Defendant's policies/procedures. (ECF No. 52-3, Hart Dep. 236:20-22; *see* ECF No. 52-15.) Prior to her termination, Plaintiff admitted to Defendant that she had violated Defendant's policy by changing her own job code. (ECF No. 52-3, Hart Dep. 230:10-16, 231:23-232:11.) Thus, Plaintiff concedes Defendant had one legitimate basis for her termination which undermines Plaintiff's pretext argument as it does not show a weakness, implausibility, or incoherency in Defendant's reasoning for its action. *See Jones*, 617 F.3d at 1280; *see Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007) (holding that "when a plaintiff's evidence supports a nondiscriminatory motive for the employer's action and the plaintiff presents no evidence to undermine that motive, summary judgment for the employer is appropriate") (citations omitted); *Fuller v. Seagate Tech., LLC*, 651 F. Supp. 2d 1233, 1243 (D. Colo. 2009). And Plaintiff, fails to point the Court to any evidence that Defendant's action was motivated "but for" by Plaintiff's age.

For two reasons Plaintiff's argument that she had previously changed her pay codes fails to establish pretext. First, there is no evidence to show that pay codes are the same as a job code. (*See* ECF No. 52-3, Hart Dep. 157:23-158:16.) Second, Plaintiff changed her pay codes at Store 438 (ECF No. 60-5, Garcia Aff. ¶¶ 4-5) while the offense for which she was terminated occurred at Store 445 (*see* ECF No. 52-3, Hart Dep. 156:8-10) and Plaintiff has failed to establish that the same practices were tolerated at the two stores. Plaintiff's further argument that she was not suspended for using a coworker's identification and password is similarly insufficient to

---

findings of the hearing officer are devoid of merit. *See supra*, III.A.1. Further, as to the hearing officer's findings, such a finding by the hearing officer fails to raise "a genuine factual issue regarding the authenticity of City Market's stated motive for firing [Plaintiff]" because the issue is whether Defendant held a discriminatory motive not what the hearing officer determined.

establish a disputed material fact.  While taking the facts in a light most favorable to Plaintiff, that it was common practice in Defendant's bookkeeping department for employees to use each other's identifications and passwords (ECF No. 60-7, Ross Dep. 63:2-64:14), Plaintiff fails to establish that Defendant tolerated *changing one's own job code* at Store 445 which is the policy she violated and for which she was terminated (ECF No. 52-3, Hart Dep. 230:10-16, 231:23-232:11; *see* ECF No. 52-15).

Plaintiff argues that the destruction of tape recordings related to Pollard's interviews with her creates a disputed material fact as to whether Defendant's reason for terminating her is pretext because the recordings would show that she was not dishonest.  (ECF No. 60 at 10-11.) Plaintiff, however, fails to show that Defendant relied upon the interviews as a *standalone* basis for determining that Plaintiff was "dishonest."  Rather, Defendant proffered that Plaintiff was dishonest "during the investigation."  (ECF No. 60-4, Hector Dep. 91:1-10.) Plaintiff fails to show that the investigation consisted solely of Pollard's interviewing her.  Without such a showing, the Court is not persuaded that Defendant's reason for terminating her on the basis of "dishonesty" is pretext for age discrimination.

Plaintiff's argument that Defendant's ignoring evidence of her prior employment record shows pretext (ECF No. 60 at 11-15) fails because she does not put forth competent evidence that Defendant was required to take such information into consideration.  And again Defendant did not "misjudge" her performance as Plaintiff conceded to Defendant she had violated Defendant's policy by changing her own job code.  (ECF No. 52-3, Hart Dep. 231:23-232:11.)

Plaintiff's argument that Defendant's failing to follow its unwritten policies and practices in how it handled her termination shows pretext (ECF No. 60 at 15-16) fails because Plaintiff does not support this argument with competent evidence that the other terminations to which she

was a witness were for similar offenses and those individuals were similarly situated to her in all material respects. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (holding that similarly situated individuals are those that deal with the same supervisor and are subject to the same standards governing their performance evaluation and discipline) (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007)).

Plaintiff's argument that Hector's comments to one of Plaintiff's former coworkers shows age discrimination (ECF No. 60 at 17-19) fails to show pretext because the facts do not indicate that age was the reason for the comments. (ECF No. 60-11, Mannara Dep. 39:7-22, 51:5-24.)

Plaintiff argues that Defendant treated her differently than younger workers. (ECF No. 60 at 19-22.) While disparate treatment of similarly situated employees is a viable way to demonstrate pretext, *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997), Plaintiff fails to show how (or even who) these individuals were similarly situated to her. Plaintiff fails to eliminate potentially confounding variables regarding the alleged similarly situated individuals. Specifically, Plaintiff fails to establish the ages of the alleged similarly situated individuals and the offenses that the alleged similarly situated individuals were of comparable seriousness. Plaintiff's argument regarding Defendant's policies relates to other facets of its business and do not relate to the specific offense which she committed and for which she was terminated and is thus, insufficient to show pretext. *See Riggs*, 497 F.3d at 1120-21.

For these reasons, Plaintiff fails to show that Defendant's reasons for terminating her employment are pretext for age discrimination.

      c.     *Plaintiff Fails to Show Direct Evidence of Age Discrimination*

Plaintiff argues that there exists direct evidence of Defendant's bias. (ECF No. 60 at 16-17.) Plaintiff, with one exception, fails to show how this alleged "bias" applied to Defendant's decision to terminate her employment. The exception is that Defendant replaced Plaintiff[5] with a younger worker after she was terminated. (ECF No. 60-4, Hector Dep. 186:1-15.) This fact standing alone, does not create a disputed material issue because it fails show that Plaintiff's age was the "but for" factor for her termination. *Gross*, 557 U.S. at 176.

Plaintiff does not make an argument pertaining to Ross's comments (ECF No. 60-3, Hart Dep. 266:7-19) which regarded "cutting out" B-tier employees (or older employees) as direct evidence of discrimination. (*See generally* ECF No. 60.) Even if Plaintiff were to have made such an argument, it would be unavailing. Plaintiff fails to provide any context to the comment, *i.e*, when Ross made it, such that the Court cannot infer that the comments were related to Defendant's decision to terminate Plaintiff. *Cf. Avila v. Jostens, Inc.*, 316 F. App'x 826, 833 (10th Cir. 2009) (unpublished) (holding that contemporaneous discriminatory remarks in relation to the adverse employment decision could be sufficient to create a discrimination inference); *see also Alfonso v. SCC Pueblo Belmont Operating Co., LLC*, Case No. 11-CV-01186-PAB-KLM, 2012 WL 6568468, at *8 (D. Colo. Dec. 17, 2012) (citation omitted).

Plaintiff's other "direct evidence" of bias (ECF No. 60 at 16-17) does not relate to Defendant's decision to terminate her employment and thus is insufficient to raise a disputed fact issue which would require a trial.

For these reasons, Plaintiff fails to show through direct evidence that Defendant discriminated against her on the basis of her age.

---

[5] Defendant, on a temporary basis, used another individual to serve as Plaintiff's replacement. (ECF No. 60-4, Hector Dep. 186:16-187:11.)

2.      Title VII- Retaliation Claim[6]

a.      *Burden of Proof and Elements*

Without direct evidence of retaliation, Plaintiff must rely on the *McDonnell Douglas* to establish her retaliation claim. *See Green v. Donahoe*, 760 F.3d 1135, 1146 (10th Cir. 2014) (citation omitted). To establish a *prima facie* case of retaliation, the plaintiff must show: (1) she engaged in a protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citations omitted). "The requisite casual connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *McGarry v. Bd. of Cnty. Comm'rs of Cnty. of Pitkin*, 175 F.3d 1193, 1201 (10th Cir. 1999) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)). If the plaintiff satisfies the *prima facie* requirement, then the burden shifts to the defendant to provide a legitimate, non-retaliatory basis for its action. *Id*. If the defendant meets its burden, then the plaintiff must offer evidence to show that retaliation was a determinative factor in the employment decision or that the defendant's non-retaliatory basis was merely pretext. *Id*. at 1202-03. Temporal proximity between protected activity and the alleged resulting adverse action may combine with additional circumstantial evidence to create a fact issue as to pretext. *See City of Prairie Vill. v. Butler*, 172 F.3d 736, 752 (10th Cir. 1999). Moreover, temporal proximity can contribute to an inference of retaliation. *See Trujillo v. Pacificorp*, 524 F.3d 1149, 1157 (10th Cir. 2008); *see also City of Prairie Vill.*, 172 F.3d at 749 (temporal proximity between request for accommodation under the ADEA and

---

[6] Defendant does not contest the predicate issue to a retaliation claim: whether Plaintiff engaged in activity protected under Title VII. (*See generally* ECF No. 51.) For this reason, the Court does not address the issue.

decline in employer's satisfaction with work performance contributed to inference of discrimination).

        b.     *Hart Fails to Establish Defendant's Reasons for Terminating Her Employment are Pretext for Retaliation*

Defendant argues that it terminated Plaintiff's employment because she was (1) dishonest and (2) violated Defendant's policies/procedures. (ECF No. 52-3, Hart Dep. 236:20-22; *see* ECF No. 52-15.) Defendant determined that Plaintiff engaged in dishonest or "untruthful" conduct by changing her job code and being less than credible during Pollard's investigation. (ECF No. 60-4, Hector Dep. 91:1-10.) Plaintiff admitted to Defendant that she changed her job code. (ECF No. 52-11, Hart Statement 8/6/11.)

Plaintiff argues that Defendant's actions are pretext for retaliation because (1) Defendant treated her more harshly than similarly situated coworkers; (2) Ross lied about whether a telephone conversation occurred between her and Plaintiff shortly after Plaintiff met with Garcia's lawyer; and (3) Defendant conducted its internal investigation and dispute resolution processes in bad faith. (ECF No. 60 at 26-37.)

With respect to the similarly situated inquiry, Plaintiff fails to establish a disputed material fact. Plaintiff does not identify Smith's age. Plaintiff does not identify that Smith engaged in misconduct similar to that in which Plaintiff engaged. Plaintiff does not identify Pollard's age. Plaintiff does not identify that Defendant knew about Pollard's misconduct, *i.e.*, the recording of his interviews of Plaintiff, prior to his deposition. Plaintiff does not identify that Hector violated any of Defendant's policies based on the "possibly" ageist joke. Because Plaintiff is unable to show that a similarly situated worker was not retaliated against, Plaintiff is unable to show pretext. *See Riggs*, 497 F.3d at 1120.

With respect to the dispute as to whether Ross lied about her conversation with Plaintiff subsequent to Plaintiff's meeting with Garcia's lawyer, the Court has construed the facts in a light favorable to Plaintiff and assumed that such conversation occurred. *See supra* II.B. At summary judgment, however, this dispute is not material because it does not show that Defendant retaliated against Plaintiff by terminating her. Even assuming the conversation occurred, Plaintiff fails to show that Defendant's reason for terminating her, *i.e.*, a violation of Defendant's policies and procedures because she changed her job code, is not worthy of credence. Plaintiff has failed undermine Defendant's legitimate, nondiscriminatory justification and thus her reliance upon *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 665 (7th Cir. 2006), and *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) is misplaced.

With respect to the argument that Defendant's investigation into Plaintiff's misconduct was biased, even assuming if true, Plaintiff has not rebutted the fact that she violated Defendant's policies by changing her job code. Nor does Plaintiff's argument rebut Defendant's further explanation of her dishonesty as related to her changing her job code.

With respect to the argument that Defendant conducted its internal dispute resolution process in bad faith, even if true, Plaintiff has not rebutted the fact that she violated Defendant's policies by changing her job code. Plaintiff presents no facts that show Defendant processed her internal dispute differently than it processed disputes of its other employees. *Cf. Riggs*, 497 F.3d at 1120-21. Plaintiff provides no citation to the record that she made requests to see her personnel file that were in compliance with Defendant's policy for allowing access to it. (*See generally* ECF No. 60.) Plaintiff provides no citation that Defendant was obligated to allow counsel to represent her during the internal dispute resolution process, or that it was obligated to

bring in a neutral mediator at Level II of the internal dispute resolution process, or that it was

obligated to arbitrate Plaintiff's dispute with Defendant's employment action[7], or that it was

obligated to follow the rulings of the Colorado Department of Labor and Employment.

For these reasons, Plaintiff fails to show that Defendant's reasons for terminating

Plaintiff's employment are pretext for retaliating against her for her having engaged in protected

activity.

c.    *Hart Cannot Establish Direct Evidence of Retaliation*

Plaintiff's alleged protected activity consisted of meeting with Garcia's lawyer at the

inception of Garcia's lawsuit against Defendant.  (ECF No. 60 at 23.)  The Garcia lawsuit was

filed in November 2005.  (*See* ECF No. 52-5.)  The Garcia lawsuit was settled and dismissed in

December 2008.  (ECF No. 52-23.)  In August 2011, Defendant informed Plaintiff that it would

terminate her.  (ECF No. 52-3, Hart Dep. 236:20-22; *see* ECF No. 52-15 at 2.)  The temporal

proximity between the alleged protected activity and the alleged retaliatory action is too large to

support an inference of retaliation.  *See EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1051-52 (10th

Cir. 2011) (holding that a time period of over a year between the protected activity and the

adverse employment action is too large to raise an inference of retaliation).

Plaintiff attempts to show retaliation by arguing that her former coworkers were retaliated

against.  (ECF No. 60 at 23-24.)  But this argument misses the mark as it does not show how

Defendant retaliated against Plaintiff.  While discriminatory or retaliatory conduct against

---

[7] The Court notes that Plaintiff does not argue and present facts that Defendant's refusal to arbitrate the matter was related to Plaintiff's having engaged in protected activity on her own behalf which could support a retaliation claim. Plaintiff's Amended Complaint made no allegation related to Defendant's retaliating against her for her filing a charge of discrimination.  (*See generally* ECF No. 6.)  Rather, Plaintiff's Amended Complaint related to Defendant's alleged retaliation against her for providing support to a former coworker's discrimination lawsuit. (ECF No. 6 at ¶¶ 14-16, 32, 43-44.)  The Court notes that it is not clear as to what "litigate the matter" (ECF No. 60-7, Ross Dep. 90:20-91:2) refers and thus does not create a disputed material fact as to whether Defendant's refusal to arbitrate is related to Plaintiff's having engaged in protected activity.  Further, Plaintiff does not argue that the refusal to arbitrate constitutes a "materially adverse employment action" necessary to state a retaliation claim.  *Cf. Green*, 760 F.3d at 1146 (holding that loss of income constitutes a materially adverse employment action).

Plaintiff's former coworkers may be probative of Defendant's intent, *see Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990), it does not show Defendant retaliated against Plaintiff for her having engaged in protected activity.

For these reasons, Plaintiff fails to show that Defendant retaliated against her.

       3.      <u>Breach of Contract Claim</u>

            a.     *Plaintiff is Not Able to Establish a Disputed Material Fact as to a Contract Claim*

The elements for breach of contract under Colorado law are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *See PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009). "Under Colorado law, an individual hired for an indefinite period of time is an at-will employee whose employment can be terminated by either party without cause and without notice. Generally, an at-will employee's termination will not give rise to a cause of action." *Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808 (D. Colo. 1995) (citing *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987)). "An employer may be held liable for the discharge of an otherwise at-will employee, however, where an implied contract arises out of company policy or employment manuals, or where an employee relies on the policies and manuals to his detriment." *Id.* (internal citation omitted); *see also Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994).

Under a breach of an implied contract claim, evidence must demonstrate that the employer intended to make an offer to the employee: "that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Vasey*, 29 F.3d at 1464 (internal quotations omitted). "An offer in the

form of an employment manual must be communicated to the employee to be effective, and must be sufficiently definite to enable the court to determine whether the contract has been performed." *Orback*, 909 F. Supp. at 808 (internal quotations and citations omitted). "Once the employee establishes the employer's intent to be bound by its procedures, he must go on to show his continued employment constituted acceptance of and consideration for those procedures." *Id*. (internal citations omitted).

While the existence of an implied contract is normally a question of fact for a jury, the issue may be decided as a matter of law if: (1) there is a valid disclaimer stating the policies are not intended to create a contract, *see Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1522 (D. Colo. 1987); (2) the alleged promises are nothing more than "vague assurances," *see Vasey*, 29 F.3d at 1464-65; or (3) if the undisputed facts otherwise "indicate[] that the employer did not intend the manual to operate as a contractual offer to the employee," *id*.

(1)     Plaintiff Cannot Demonstrate the Existence of a Contract

Plaintiff's contract claim is predicated upon the Dispute Resolution Guidelines ("DRG") (ECF No. 52-16.) The document in question contains nothing more than vague assurances and Defendant did not intend the policy to operate as a contractual offer to Plaintiff. First, the document itself identifies that if an employee invokes the DRG, Defendant would engage in an "earnest effort . . . to settle such disputes promptly. . . ." (ECF No. 52-16 at 2.) This is nothing more than a vague assurance to engage in informal dispute resolution procedures. *See Vasey*, 29 F.3d at 1464. Defendant did not obligate itself to arbitrate Plaintiff's dispute. Further, Defendant presents undisputed facts that show it did not intend the DRG to operate as a contractual offer to Plaintiff. (ECF No. 52-24 at 2 ("City Market . . . reserves the right to make final decisions concerning the interpretation and application of its policies, practices, and

programs, and to change or discontinue them at any point.") This disclaimer is "clear and

conspicuous" and sufficient to rebut Plaintiff's claim that the DRG constituted a contract. *See,*

*e.g., Ferrera v. A.C. Nielsen*, 799 P.2d 458, 460-61 (Colo. App. 1990) ("Summary judgment

denying claims based on a handbook is appropriate if the employer has clearly and

conspicuously disclaimed intent to enter a contract . . . ").

 While Defendant may have taken the DRG seriously, Plaintiff fails to establish as a

matter of law that it constituted a contract.

 For these reasons, the DRG did not constitute a contract.

(2) Plaintiff Cannot Demonstrate a Breach of the Alleged
Contract

 Plaintiff attempted to engage in all three levels of the DRG. The parties engaged in the

first two levels of the dispute resolution process. (ECF Nos. 52-17; 52-18.) Defendant was not

obligated to mediate Plaintiff's dispute in the manner Plaintiff deemed acceptable. (ECF No. 52-

16 at 2 ("This [mediation] conference will be conducted by the Employee Relations Manager or

his/her designee.").) Defendant was not obligated to arbitrate Plaintiff's dispute. (ECF No. 52-

16 at 2 ("The decision to arbitrate shall be solely determined by the [Defendant], in its

discretion.").) Defendant declined to arbitrate the dispute. (ECF No. 52-19.) Thus, Plaintiff

fails to demonstrate that Defendant breached the contract.

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     SUSTAINS, in part, Defendant's objections (ECF No. 63) to Plaintiff's evidence

submitted in opposition to the summary judgment motion; and

(2)     GRANTS Defendant's motion for summary judgment (ECF No. 51).

The Clerk of the Court is directed to enter JUDGMENT in Defendant's favor.

DATED this 3rd day of December, 2014.

BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge